## SCOTT v. THE STATE.

There was no material error in the extracts from the charge, of which complaint was made in the motion for a new trial.    The evidence warranted the verdict.    The alleged newly discovered evidence did not require a new trial, and the refusal of one was not erroneous.

Submitted February 20, — Decided March 2, 1905.

Indictment for burglary.     Before Judge Felton.     Bibb superior court.    December 22, 1904.

On the trial of Henry Scott, under an indictment charging him with having burglarized the dwelling of J. W. Cannon, the evidence submitted by the State was substantially as follows : Cannon and his family were away from home most of the day on May 6, 1904. They had no servants, left no one in the house, and left all the doors of the house locked and the windows down or closed. During their absence the house was entered by some one opening a shutter or blind to the kitchen window, and, from the kitchen, entering the butler's pantry by placing a chair under a window between such pantry and the kitchen and raising that window and going into the butler's pantry. ˙ In doing this, the bottom of the chair was broken out. After entering the butler's pantry, the person had free access to the house.     Immediately after the burglary, a number of articles were missed from the house, among them, a watch, finger-rings, ear-rings, preserves, wines, towels, bread-tickets, books (one of which was a testament with a quotation written in it) a blacking-brush, putty-knife, chisel, kitchen-knife with a dent in it, a dollar package of sugar, marked with the name of the seller, the " A. and P. Tea Co.," a pair of curling-irons, and three or four keys, one of which belonged to a lock on a bedroom and another to the lock on the back door, which last-mentioned key had been repaired and had ˙notches on it made with a file. Some time in July, after the burglary, the marked key and curling-irons, which were positively identified as articles stolen from the house at the time of the burglary, were found in the possession of the accused.  A kitchen knife, a bottle of wine, a package of sugar, a testament, towels, and bread-tickets were also found in his possession, and were shown to be exactly similar to articles of the same character that were stolen from the house when the burglary was committed. For about six months prior to the burglary committed

upon Cannon's house, the accused was employed by the occupants of adjoining premises, between which and the lot on which Cannon's house was situated was a brick wall eight or ten feet high. The accused was frequently seen sitting on this wall, where he had full view of the rear of Cannon's dwelling and ample opportunity for knowing the entire situation in reference to that portion of the premises burglarized. The accused introduced no evidence, but made a statement in which he claimed that none of the articles named, which were found in his possession, came from Cannon's dwelling; that the keys belonged to the house which he occupied; that he had picked up the curling-irons where they had been thrown away by the occupants of the premises where he had been employed; and that he had bought the sugar found in his possession. There was a verdict of guilty. The accused moved for a new trial which was refused, and he excepted.

*John R. Cooper*, for plaintiff in error.
*William Brunson, solicitor-general*, contra.

FISH, P. J. (After stating the facts.) After instructing the jury on the subject of breaking as an element of burglary, the court, in the charge, said: "To illustrate what I mean, the law does not require that its citizens, in order to protect their houses from being burglarized, should put bars on their windows and padlocks on their doors, and matters of that sort. The law is, when a man closes the front of his house and goes out of it, if that door is pulled to and fastened only by a bolt that can be turned with the hand, or not bolted at all, but some degree of force is required to open it, that is all the fastening that is needed, so far as the law is concerned, as to that door; and if a door which is fully closed or a window which is completely closed is pulled open with no greater degree of force than is necessary to accomplish the opening of that door so fully closed, that is a sufficient breaking to constitute the breaking referred to in the statute." This was excepted to, on the grounds that it was argumentative, and that the illustration used by the court was not authorized by the evidence. Clearly there was no merit in the exception.

The court instructed the jury fully and correctly on the subject of reasonable doubt, and also gave them the law of circumstantial evidence. The jury were further instructed, that if they

believed, beyond a reasonable doubt, that a burglary had been committed, as charged in the indictment, it was for them to say, under the evidence, whether or not articles stolen from the house, at the time it was burglarized, were found in the possession of the accused; and that unless the articles found in his possession were identified to their satisfaction, beyond a reasonable doubt, as having been stolen from the house when it was burglarized, he should be acquitted.    In this connection, the following charge was given :    "Where a burglary has been committed and property which was in the house at the time of the burglary is soon thereafter found in the possession of a person who is unable to account for his possession, it raises a presumption of his guilt, and the jury are authorized to convict upon this testimony alone; this being a matter entirely for the jury, taking into consideration the character of the case, the nature of the property found upon his person or in his possession, the length of time which had elapsed since the burglary, and the difficulty or impossibility on the part of the accused to account for his possession of the property, if you should conclude that it was stolen from the house at the time that a burglary was committed."    This charge was excepted to on the grounds :    (1) that "there is no presumption of guilt arising against the defendant in any criminal case." (2) "There was no evidence introduced on the trial to show the prisoner was found in the recent possession of the stolen property."    (3) "The possession of stolen property is only a fact for the jury to consider, going to show the guilt of the accused, but it is not sufficient in law to convict."    While the charge excepted to was not as full and explicit as it might have been, it was not open to the exceptions made.    It is true that the articles alleged to have been stolen from the house when it was burglarized were not found in the possession of the accused very soon after the burglary, as the burglary was committed on the 6th of May and the articles were found in his possession some time in July thereafter.    The court, however, specially instructed the jury that they should take into consideration the length of time which had elapsed since the burglary, and the difficulty or impossibility on the part of the accused to account for his possession of the property, if they should believe it was stolen from the house when a burglary was committed.    One charged with a criminal offense

is presumed to be innocent, until his guilt is proved to the satis-
faction of the jury beyond a reasonable doubt.    But where the
crime charged is burglary and it is clearly shown that a burglary
has been committed as charged in the indictment, that certain
articles were in the house at the time of the burglary and were
taken therefrom by the burglar or burglars, then the recent pos-
session, after the burglary, of the goods so taken, unexplained,
may authorize the conclusion that the possessor of the goods com-
mitted the burglary.    The court did not instruct the jury that,
in such a case, the recent possession of the stolen goods would
raise a legal presumption of guilt; but the clear meaning of the
charge is, that proof of the burglary and of the recent and unex-
plained possession of goods stolen from the house at the time it
was burglarized were facts which would authorize a conviction.

One ground of the motion was the alleged newly discovered
evidence of M. Goldman, who made an affidavit that, about the
time Cannon's house was burglarized, a negro, giving his name as
N. Scott, came to his place of business and pawned a lady's watch,
which was subsequently identified and claimed by Cannon; that
this was a strange negro, and not in fact N. Scott; that affiant
knew Henry Scott, and the man who pawned the watch was not
Henry Scott.    The accused and his attorney made affidavits that
they did not know of the testimony of Goldman until after the
trial.    Upon the hearing of the motion the State introduced the
affidavit of J. W. Cannon, in which he deposed that he identified
the watch which Goldman had as the property of his (Cannon's)
daughter, which was stolen from his dwelling at the time it was
burglarized; that he informed Goldman of the burglary and that
the watch belonged to his daughter and had been stolen, and
notified him not to dispose of it; that Goldman promised to hold
the watch, but shortly thereafter, when affiant went to Goldman
for the watch, he learned that it had been disposed of, and he had
never seen it since; and that Goldman was in attendance upon
the court as a witness when the case was tried, and was readily
accessible to the accused and his attorney.    The State also sub-
mitted the affidavit of Polly Glover, who deposed that she and the
accused were both employed as servants at the house adjoining
Cannon's dwelling, and that the accused was called and known as
N. Scott and she had seen him write his name as N. Scott.    The

State also introduced the affidavit of Calloway, a police officer, to the effect that, while investigating the burglary of Cannon's house, he went to Goldman and asked him if he could identify the negro who had pawned the watch stolen from Cannon's dwelling, and Goldman told him he could not. It is not at all likely that the alleged newly discovered evidence would produce a different result upon another trial, and the court did not err in refusing to grant a new trial on this ground. The evidence warranted the verdict, and there was no error in refusing a new trial.

*Judgment affirmed. All the Justices concur.*