## WHITE *v.* THE STATE.

1. One who engages in any act connected with the keeping and maintaining of a gaming-house and in aid thereof is guilty of the offense defined in the Penal Code, § 398.
2. The conduct of a person charged with crime, which affords reasonable inference of a consciousness of his guilt, is relevant evidence on his trial. It is not improper for the prosecuting attorney, in opening the case, to state to the jury that he will rely in part on proof of this character. The testimony admitted over the defendant's objection related to the conduct of the defendant on a former occasion, when he was about to be identified as connected with the operation of the gaming-house for the keeping of which he was on trial, and was properly allowed.
3. A new trial will not be granted because of the remarks of the prosecuting attorney, where no exception is taken at the time, either by motion to declare a mistrial, or otherwise, and the language complained of is not of such a prejudicial nature as to authorize a conclusion that the accused was injured by its use.

Submitted December 17, 1906, — Decided January 15, 1907.

Indictment for keeping gaming-house. Before Judge Cann. Chatham superior court. October 9, 1906.

*Edmund H. Abrahams,* for plaintiff in error.

*W. W. Osborne, solicitor-general,* contra.

Evans, J. The defendant was convicted of the offense of keeping and maintaining a gaming-house. In his motion for new trial he alleges the following excerpts from the judge's charge to the jury to be error: (1) "But on the other hand, if you are satis-

18

fied beyond a reasonable doubt, from the evidence, that the accused contributed to or aided in maintaining and keeping a gaming room, that would be sufficient to sustain this indictment." (2) "It is not necessary that a party charged with this offense should be wholly in control of the establishment. If you find that whatever was done, if anything, was done by the defendant as a part of something connected with the keeping and maintaining of a gaming room, that would be sufficient to sustain this indictment." Both of these excerpts are alleged to be couched in language too broad and sweeping, and the first excerpt is further criticised because it amounted to an instruction that the jury would be authorized to convict if the defendant only gambled in a gaming room. One who merely takes part as a player would not be guilty of the offense of keeping and maintaining a gaming-house; but if he does any act connected with the keeping or maintaining of the gaming-house, and in aid thereof, he would share the responsibility of the proprietor of the enterprise. Substantially the same charges were before this court in *Rosenthal* v. *State,* 126 *Ga.* 558, and *Wallace* v. *State,* Id. 749, and were held not to be open to the criticisms here made.

2. The solicitor-general, in opening his case to the jury, used the following language: "I expect to prove that this defendant is guilty of keeping and maintaining a gaming room. I expect to prove further that upon the trial of another gambling case in this court the defendant was present, sitting outside of the railing, and, when a witness was on the stand and asked to identify the party dealing the game, that this young man started out of the room to escape detection; that the judge of the court, his honor who now presides, directed that the defendant be detained and had him brought inside and identified by the witness as the person who kept and maintained a gaming-house, and that it was because of the judge's action that he was identified, and held for the grand jury." Alleging that the remarks were improper, counsel for plaintiff in error moved for a mistrial. The court refused this motion and cautioned the jury not to consider the remarks of the solicitor-general, admonishing them that the sole question to be determined was, whether or not the evidence which would be submitted would establish the defendant's guilt. We do not think that the remarks of the solicitor-general offended the proprieties

of a fair and impartial trial. It is usual for a prosecuting attorney, in opening the case, to give to the jury a general outline of the charge against the defendant, and the general scope of the evidence upon which the State will rely to sustain it. It is to be expected that he will fairly state the evidence upon which he relies, and not inject into the case any matter which is not properly admissible in evidence. The effect of the solicitor's remark was that he intended to show that the defendant was guilty of such conduct as indicated a consciousness of guilt. The conduct of a person charged with a crime, indicating a consciousness of his guilt, is relevant evidence against him. It was competent for the State to prove that in the trial of a different gaming case the defendant was present as a spectator, and that when one of the witnesses in that case was called upon to identify the party who was "dealing the game," the defendant left the room, and, when brought back at the instance of the court, was identified by the witness as the person who kept and maintained the gaming-house which was under investigation in the present case. The evidence being competent, the solicitor-general was at liberty to refer to the circumstance as being one of the links of proof identifying the defendant as such keeper. *Grant* v. *State,* 122 *Ga.* 740.

The court admitted in evidence the following testimony: "Q. Were you present when Becker identified White? A. Yes, sir. Q. What did White do at that time? A. Got up to leave the court-room. Q. When the young man was identifying White, who was sitting down, what was White's action at that time, while he was being asked the question: 'Point out the man who was in charge there, who had charge of the crap table?' A. The judge asked Becker if he could identify the man." These questions and answers were objected to on the ground that they were immaterial to the issues involved, and that they sought the conclusion of the witness as to the actions of another party. The circumstance elicited from this witness was relevant as describing the defendant's conduct, which the jury could consider as indicating a consciousness of guilt. They stated the facts, and not the conclusion of the witness.

3. During the progress of the trial the solicitor-general said, in the presence of the court and jury: "I don't know by what process I could get the judge of this court to testify as to the manner

in which White was identified and ordered held; I want to rebut that" (referring to defendant's statement). "The judge then replied to State's counsel that he would not testify in the case." No request was made to declare a mistrial because of these remarks by the solicitor-general, but plaintiff in error contends that the language of the prosecuting attorney was so improper and prejudicial to the defendant that the court, of its own motion, should have declared a mistrial. It does not appear at what stage of the trial the solicitor used this language, but from the context it was probably immediately after the defendant had made his statement. It was in effect an inquiry upon the part of the solicitor as to the propriety of introducing the presiding judge as a witness, and a ruling by the court that he could not testify in the case. Even if the language was improper, as indicating that "the court had begun the prosecution," exception should have been taken at the time to the use of the language. A party should not apparently acquiesce in what transpires at the trial, and risk the result of the verdict, and for the first time complain of the impropriety after verdict. The language was not of such a character as vitiated the trial, and as no exception was taken at the time, a new trial should not be granted on this account.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*