TRAMMELL *v.* THE STATE.

No. 11598. JANUARY 14, 1937.

,*Claud F. Brackett* and *John H. Hudson*, for plaintiff in error. *M. J. Yeomans, attorney-general, W. Y. Atkinson, solicitor-general, B. D. Murphy,* and *E. J. Clower,* contra.

RUSSELL, Chief Justice. Mose Trammell was indicted for the murder of his wife. On the trial the evidence tended to show the following facts: Mose Trammell and his wife were separated. The wife was living with her mother in Troup County, and the defendant was living in Atlanta. He went to Troup County to visit his wife. He arrived at the home of his mother-in-law, and found the wife and her sister ironing. Their mother also was in the room, sitting by a fire. They were talking. The defendant became enraged at the refusal of his wife to return to him, and cut and stabbed the three women with his pocket-knife. They fell out the door into the yard, or were thrown out by defendant, he

falling out on top of his wife. She and her sister were mortally wounded, and died within a few moments. The mother recovered. The defendant jumped from the ground and ran off through the woods. He was found about two and a half miles from where the homicide took place. He had crossed and got out of the road, and had kept his knife with blood stains on it. At the trial he made a statement in which he claimed that the women had tried to kill him, that his wife had hit him, that they all jumped on him, his wife grabbing a flatiron, that his sister-in-law had brought an iron poker into the room, and there was a shotgun, and he thought they were going to kill him, that they knocked him down and out of the door, and that he cut them to protect his own life. In his statement he further said that he was on his way to surrender to the sheriff, when he was apprehended. The jury returned a verdict of guilty of murder, without a recommendation. The defendant moved for a new trial. The court overruled the motion, and the defendant excepted.

Two grounds of the motion are as follows: (4) "Movant contends that the court erred' in failing and refusing to grant a continuance in his case, on motion. . . On the call of the case for trial by the court, and the State announcing ready, the court . . said, 'What do you say for the defendant?' Thereupon Mr. John H. Hudson of counsel for movant, in his place as such in open court, moved for a continuance, as follows: 'The defendant will not be ready in this case. Last week, beginning on Monday morning, I was in the United States court up until Tuesday at 11:00. After that I went into the State court to assist in the prosecution of a case where I had previously attended the prosecution, and we finished that case Saturday afternoon about four o'clock. I have hardly had an opportunity, may it please your honor, to look at the indictment. I understand there are two indictments, and have had no time in the world to consult with the defendant, and have seen him only one time. No time to prepare this case and present it properly up to the present. For those reasons, I feel it is my duty as one of the counsel in the case to ask this court to grant a reasonable time to get ready.' Movant contends that he should have been granted a continuance by the court in this case, in order that his counsel have a reasonable time to prepare his defense; and he further contends that in refusing

to grant the continuance requested the court abused its discretion in such matters, and forced movant to go to trial when his counsel was not prepared for trial, and that it was error to overrule his motion for a continuance." (5) "Movant insists that the court erred in overruling a motion to continue the case, made by Col. Claud F. Brackett, leading counsel in the case, Mr. Brackett stating in his place as counsel for movant, on the call of the case, as follows: 'Of course, I am with Mr. Hudson in this defense. Last Friday, and before this man was indicted, my wife had to go to the Crawford W. Long Hospital for a major operation, and she was in the critical condition, and it was impossible for me. to come down here and see the indictment and confer with the defendant, or knowing anything about what particular witnesses the State had, or anything about it. I was in that position, and to-day is the first time I have been able to come down here myself. I have been unable to have any conference at all with this man since he was indicted; and for these reasons we can not possibly go to trial.' The court: 'Have you had any conference with him before he was indicted?' Mr. Brackett: 'Yes, sir, I had a conference with him before he was indicted.' And further on the ground that associate counsel, Mr. John H. Hudson, in support of the motion to continue, stated to the court as follows: 'For the additional ground of motion for continuance, I have only been employed in this case for about ten days or thereabout, . . a little better than a week; and I ask a continuance. I have never had time to prepare his defense.' . . The court: 'I overrule your motion.' Three hours later the case was called again on the same day, May 12, 1936, for trial, in the following manner: The court: 'What do you say, Mr. Hudson?' Mr. Hudson: 'We are in no better shape than we were this morning. We still insist on our motion, but under the court's ruling this morning we will go to trial.' The court: 'Strike a jury, gentlemen.' Movant contends that the overruling of this motion by the court and the judgment of the court compelling movant to go to trial when his counsel were unprepared and when his life was at stake was an abuse of the discretion of the court, and was therefore a reversible error." Supporting affidavits from movant's counsel were attached to and made a part of the motion for new trial. The homicide was committed on April 2, 1936. The indictment was returned by the grand jury five or six days before the trial on May 12, 1936.

■ The judge did not err, in the circumstances, in overruling the request of the defendant's counsel for a continuance of the trial. There was no formal and proper motion therefor. No testimony under oath on the subject of necessity for continuance was offered. Three hours after the court had refused a continuance, and before the case was called for trial, the judge again inquired of the defendant's counsel whether they were ready to go to trial. At that time no motion was made to postpone the trial at least one day to enable counsel to consult with the defendant and ascertain whether it was necessary to ask for further postponement on account of the absence of material witnesses. No motion for a postponement was made at any time. In response to the inquiry of the judge, counsel merely stated: "We are in no better shape than we were this morning. We still insist on our motion, but under the court's ruling this morning we will go to trial." The court then said, "Strike a jury, gentlemen," and the case proceeded to trial. See Code, §§ 27-2002, 81-1419; *Ray* v. *State*, 91 *Ga.* 87 (16 S. E. 311); *Pressley* v. *State*, 132 *Ga.* 64 (63 S. E. 784).

■ A verdict finding the defendant guilty of uxoricide should not be set aside as contrary to law and the evidence, and a new trial granted, solely because the only eye-witness to the killing was the mother of the defendant's wife, who was biased and prejudiced, and because the defendant had wounded her at the time he killed his wife, and, the testimony of such witness giving a version of the killing contrary to that given by the defendant in his statement, the jury should have believed the defendant's statement in preference thereto. The probative value of evidence and the credibility of witnesses are matters for the jury. The statement of the defendant, not under oath, has only such force as the jury may think right to give it. They may believe it in preference to the sworn testimony, if they see fit. Code, §§ 38-415, 38-1805.

■ A new trial should not be granted because of the admission in evidence of a letter purporting to have been written by the defendant to his wife, in which he threatened to kill her if she refused to return home with him, in that the only witness who identified the letter as having been written by the defendant was his brother-in-law and was an uneducated negro who was biased and embittered toward the defendant, and had seen the defendant

write on but one other occasion, about a year and a half previously. It appears that this witness testified that he had seen several letters which the defendant had written; and the mother of the deceased testified that the deceased had received a letter from the defendant before the homicide, at a time corresponding generally with the date of the letter in evidence.

■ The judge did not err in charging the jury that "while it is true that the law presumes malice whenever a homicide has been shown, yet that presumption of malice may be rebutted by the defendant from evidence offered by the defendant and by the State, or by both," in that the defendant offered no evidence, and said instruction had the effect of calling attention of the jury to that fact.

■ The verdict finding the defendant guilty of murder, without a recommendation, can not be set aside on the ground that one of the jurors was a non-resident of the State at the time of the trial, no challenge having been presented before verdict. "An objection that one of the jurors who tried the case was a non-resident of the county at the time of the trial, being propter defectum, comes too late after verdict." *Daniel* v. *State,* 11 *Ga. App.* 799 (6) (76 S. E. 162). See *Jordan* v. *State,* 119 *Ga.* 443 (5) (46 S. E. 679); *Hill* v. *State,* 64 *Ga.* 453, 465. This is true even though it appears that the movant did not know of such fact until after the verdict. *Brown* v. *State,* 105 *Ga.* 640 (31 S. E. 557). Furthermore, under the counter-showing by the State, the juror deposed that he was, at the time, a resident of the county where the trial was had. *Brown* v. *State,* supra; *Sikes* v. *State,* 116 *Ga.* 182 (42 S. E. 346).

■ The evidence authorized the verdict, and the judge did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*