26943.   HORTON v. THE STATE.

Submitted January 11, 1972—Decided February 11, 1972— Rehearing denied February 28, 1972.

*Glenn Zell*, for appellant.

*Lewis R. Slaton, District Attorney, Joel M. Feldman, James H. Mobley, Jr., Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Courtney Wilder Stanton, W. Hensell Harris, Jr., Assistant Attorneys General,* for appellee.

Almand, Chief Justice. The appellant, Johnny Larry Horton, was indicted by the grand jury of Fulton County on charges of armed robbery and motor vehicle theft. He was tried before a jury, which found him guilty of both charges, and fixed his punishment at 20 years imprisonment for the armed robbery and 5 years for the theft of the vehicle. The trial court denied appellant's motion for a new trial, as amended, and he appeals from that order.

■ Appellant enumerates as error number 1 a portion of the court's charge to the jury, as follows: ". . . I charge you that if a crime should be committed as charged in this indictment, that is to say, a theft of a motor vehicle, and recently thereafter the defendant should be found in possession of the stolen property, the property stolen as a result of such a crime, that that would be a circumstance from which you, the jury, would be authorized to infer guilt, if you saw fit to do so, unless the defendant should make an explanation of his possession of the stolen property, if you find that he did have possession of it, consistent with his innocence, all of which, of course, are questions of fact for you, the jury, to determine, ladies and gentlemen."

Appellant contends that, as he did not testify in his own behalf at the trial, this charge amounted to an impermissible comment by the court on his silence, in violation of his rights under the 5th and 14th Amendments to the United States Constitution.

This contention is without merit. The evidence adduced on the trial of the case showed that an automobile, stolen

the same day, was used as the "get-away car" in a bank robbery; that police officers chased the car until it wrecked; and that four men, including the appellant, ran from the car and were arrested by police. "The possession of recently stolen goods, unaccounted for, raises an inference that the possessor is the one who stole the goods, and if the accused does not want this inference to arise in his case, he must account for his possession. *Bryan v. State,* 62 Ga. 179; *Lundy v. State,* 71 Ga. 360; *Mathews v. State,* 103 Ga. App. 743 (2) (120 SE2d 359)." *Aiken v. State,* 226 Ga. 840, 844 (178 SE2d 202).

Charges on this rule of law, in language similar to that complained of here, have been approved many times by the appellate courts of this State. *Aiken v. State,* supra; *Scott v. State,* 122 Ga. 138 (50 SE 49); *Lewis v. State,* 120 Ga. 508 (48 SE 227); *Rutland v. State,* 90 Ga. 102 (15 SE 813); *Harrison v. State,* 74 Ga. 801; *Taylor v. State,* 118 Ga. App. 605 (164 SE2d 876); *Mathews v. State,* 103 Ga. App. 743 (120 SE2d 359); *Walden v. State,* 83 Ga. App. 231 (63 SE2d 232).

As stated in *Aiken v. State,* supra, p. 845: "It was not erroneous to charge this principle, where the evidence showed the possession of stolen property, even though the appellant did not account for his possession by evidence or by statement. *Trammell v. State,* 183 Ga. 711, 715 (189 SE 529). The charge can not properly be construed as being a comment on the appellant's failure to testify or make a statement."

■ The transcript shows that the jury was permitted by the trial court to disperse overnight on three occasions. At the conclusion of the first day of the trial, the court excused the jury after conferring at the bench with counsel for appellant and for the State, but the subject matter of that conference is not a part of the record. On the second day, the court, in the absence of the jury, inquired of appellant and of his counsel if they objected to the jury dispersing for the night, and they stated that they did not. On the third day, the court permitted the jury to disperse, but the record does not show that he first conferred with appellant or his

counsel or asked if they objected.

Appellant enumerates as error number 3 the first and third dispersals of the jury, which, he claims, were without his consent or that of his counsel.

After appellant filed his notice of appeal, the district attorney filed a petition in the trial court seeking permission to supplement the record by the addition of an affidavit. After hearing, the petition was granted, and the following affidavit was transmitted to this court:

"Personally appeared before the undersigned officer duly authorized to administer oaths, Stanley P. Herndon, Esq., who, first being duly sworn on oath and says:

"1. That said Stanley P. Herndon, Esq., was defense counsel at the trial of Johnny Larry Horton in his trial of the above styled case.

"2. That he did in fact consent in behalf of Johnny Larry Horton to have the jury disburse [sic] overnight on two occasions and did not object to said disbursement [sic]."

Unfortunately, we cannot tell from the affidavit which two of the three dispersals were with the consent of appellant's counsel. If he had specified the first and the third, we could consider the matter at an end, but since the affidavit is ambiguous, we are compelled to treat at least one of the overnight dispersals as being without the consent of appellant.

"The law requires that a jury in a criminal case be kept together until the conclusion of the trial (*Berry v. State,* 10 Ga. 511, 512 (9)), unless counsel for both the State and the accused agree otherwise (*Buttersworth v. State,* 200 Ga. 13 (1) (36 SE2d 301); *Hannah v. State,* 212 Ga. 313, 319 (92 SE2d 89))." *Atlanta Newspapers v. State of Ga.,* 216 Ga. 399, 404 (116 SE2d 580).

The State argues that appellant's right to have the jury kept together was waived or lost by his failure to object seasonably to their dispersal. This is the ruling of the courts in some jurisdictions. See 21 ALR2d 1123. In fact, Georgia is listed in this annotation as recognizing this rule, although we do not agree that the case cited, *Johnson v.*

*State,* 75 Ga. App. 186 (43 SE2d 119), should be so read.

We would be hesitant to apply such a rule unless it is shown that the defendant in a criminal trial had an opportunity, outside the hearing of the jury, to object, and that he did not. Otherwise, he might be forced to object in the presence of the jury, and this could create in the minds of the jurors the impression that they would be free to return to their homes, but for the insistence of the defendant. A criminal defendant should not be placed in a situation where, by his objection to their dispersal, he engenders a feeling of animosity or resentment among the jurors. *Mitchell v. State,* 41 Ga. 527.

Having made these cautionary statements, we are of the opinion that in the instant case a waiver clearly is shown, for the reason that on two of the three nights during the trial, permission for the dispersal of the jury was granted by appellant or by his counsel. If such consent was granted with respect to the first and second nights, the trial court was fully justified in following the same procedure on the third night. On the other hand, if such consent was granted with respect to the second and third nights, appellant had ample opportunity after the first dispersal to make his objection known to the trial judge. He did not do so, and in the absence of any showing of prejudice resulting therefrom, we are of the opinion that by consenting to the dispersals of the second and third nights, appellant thereby acquiesced in the dispersal of the first night and waived his right to object thereto.

This, admittedly, is a close question, and the better practice would be for the trial judge to reach an agreement with counsel for dispersal or non-dispersal and to make such agreement a part of the record, but under the circumstances of this case, we do not believe that reversible error was committed, if error was committed at all.

■ Near the end of the first day of the trial, one of the jurors related to the trial judge that, shortly after the robbery took place, he overheard one of the State's witnesses relate what he had seen. Appellant enumerates as error

number 4 the court's failure to excuse the juror or, in the alternative, to declare a mistrial.

The record reveals that the following transpired at the trial while the jury was in recess and out of the courtroom:

"The Court: Mr. Herndon, one of the jurors during the recess said he heard Mr. McClung come into the YMCA a few minutes after this happened and talk about the case. Let me be sure that can't be any prejudice to your client, let me let you ask him questions. All right, Mr. Sheriff, bring the juror, Mr. William Harrick, into the courtoom. (Whereupon, juror William Harrick entered the courtroom.) The Court: The sheriff informs me that you informed him, and I appreciate your telling me, that you now remember Mr. McClung coming in the YMCA and discussing the incident. Mr. William Harrick: Right. The Court: Did he say anything there that was anything substantially different from what he testified here today? Mr. William Harrick: No. The Court: Mr. Herndon, do you want to ask any questions? Mr. Herndon: No, sir, I don't believe so. I think if it's that sort of a situation then I don't believe it disqualifies him because it wasn't under oath. The Court: All right, Mr. Harrick, will you do this? Mr. McClung's testimony, of course, was just general anyhow, but just to be doubly sure that we are protecting the rights of every party, and Mr. McClung did not identify anyone, so suppose you just not discuss this matter, what Mr. McClung told you, with the other jurors. In other words, I think it's really not relevant to what happened on the matter under issue. Mr. William Harrick: I didn't think so either. I hesitated to bring it out but I figured I better say something. The Court: When I say it's not material, you don't know of anything he said there that is material to the matter that we have under investigation, do you? Mr. William Harrick: No. The Court: All right, fine. You may return to the jury room. (Whereupon, juror William Harrick retired from the courtroom.) The Court: All right, gentlemen, are you satisfied for us to continue with the twelve jurors? Mr. Herndon: Yes, sir, I have no objection to him."

Appellant, through his counsel, clearly waived any objection to this juror, and made no motion for a mistrial. In view of his waiver and the trial judge's instructions to the juror, this enumeration of error is without merit.

■ During the pre-sentence hearing, the district attorney obtained from the trial judge an order removing from the dead docket a previous robbery case in which appellant was the accused. Over appellant's objection, two witnesses were permitted to testify that they had witnessed the other robbery, and that appellant was one of the robbers. In his pre-sentencing charge, the trial judge instructed the jury that they could consider such testimony only if they found that, taken as a whole, it would have been sufficient to convict.

Appellant enumerates as error number 2 the introduction in evidence of such testimony.

*Code Ann.* § 27-2534, which affords one convicted of crime a separate hearing solely on the question of sentence, provides in pertinent part as follows: "In such hearing, *subject to the laws of evidence,* the jury shall hear additional evidence in extenuation, mitigation and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any such prior criminal convictions and pleas." (Emphasis supplied.)

In *Dudley v. State,* 228 Ga. 551, 561, we considered a similar question, and came to this conclusion: "The nature of the pre-sentence hearing involves the 'general character' (*Code* § 38-202) of the defendant, and where the State has notified the defendant that such evidence will be admitted (*Code Ann.* § 27-2534), evidence of general bad character may be admitted."

In the instant case, the evidence was not of prior convictions or pleas of appellant, but consisted merely of the statements of two witnesses that appellant had committed a previous robbery. Such evidence could serve no purpose other than to place appellant's character in evidence, and while we held in *Dudley v. State,* supra, that evidence of general bad character is admissible, certain long-established

rules of evidence still must be observed, among which is the following:

"'Where character is put in issue, the direct examination must relate to general reputation, good or bad, as the case may be'; and 'particular transactions, or statements of single individuals,' can not be brought into the inquiry except on cross examination . . . *May v. State*, 185 Ga. 335, 339 (195 SE 196); *Moulder v. State*, 9 Ga. App. 438 (71 SE 682)." *Wilson v. State*, 190 Ga. 824, 829 (10 SE2d 861).

The testimony here being concerned purely with a specific act, rather than with appellant's general reputation in the community, the trial judge erred in allowing it in evidence. Accordingly, a new pre-sentence hearing is ordered with respect only to the issue of punishment. *Code Ann.* § 27-2534.

■ Appellant's enumeration of error number 5, that the denial of his motion for a new trial, as amended, was erroneous on the general grounds is not meritorious, as the verdict of guilty was supported by the evidence.

*Judgment affirmed as to the conviction; reversed as to the sentence. All the Justices concur.*