DAVIS *vs.* THE STATE OF GEORGIA.

| 74 | 869 |
|124 | 778 |

1. The evidence in this case was sufficient to show the defendant guilty of murder beyond a reasonable doubt, and the facts and circumstances proved excluded every other reasonable hypothesis except that of guilt.

2. The following charge of the court contains a correct statement of the necessity for proving the links in a chain of circumstances: " When the guilt of the defendant depends on circumstantial evidence alone, the rule is that each separate fact or link which goes to make the chain of circumstances from which the deduction of guilt is sought to be drawn must be clearly proved, and a fact not

clearly proved should not be considered as a part of the chain of circumstances, but should be rejected by the jury, and the circumstances proved must not only be consistent with the defendant's guilt, but they must exclude every other reasonable hypothesis than that of the defendant's guilt. If any one or more of the circumstances relied on by the state are not clearly proved, and for this reason you reject one or more of the circumstances relied on, then you will inquire whether the other remaining circumstances proved—if they are clearly proved—are consistent with defendant's guilt, and inconsistent with any other reasonable hypothesis than that of defendant's guilt. All essential facts and circumstances necessary to show the commission of the crime and so connect the defendant therewith as the party committing the act must be proved.

3. The requests to charge, numbered from 1 to 8, in so far as they were proper to be given, and so far as properly brought before this court for consideration, are substantially covered by the general charge.

4. The following charge, on the subject of motive for the commission of a murder, was correct: "You may inquire whether there was any motive on the part of the defendant to induce him to take the life of the deceased; and if there was any motive, what that motive was. If you find there was no motive on his part to commit the act, you may consider it, especially if the evidence leaves the defendant's guilt at all doubtful, in deciding whether the defendant is guilty or not. Yet, if the evidence shows the commission of the crime, and you are satisfied, beyond a reasonable doubt, that the defendant committed it with malice aforethought, either expressed or implied, and if the circumstances are consistent with his guilt, and inconsistent with any other reasonable hypothesis than that of his guilt, then, though the evidence may not disclose a motive, you would be authorized to find the defendant guilty."

5. The exceptions to various portions of the charge are unfounded or immaterial, or not hurtful, when read and considered with the balance of the charge.

6. There was no error in admitting evidence of various statements of the defendant, especially those made to the sheriff, denying having shot any gun where the firing was heard, it not appearing that there was anything done by the officer to excite the slightest fear or hope. Nor was there error in the charge on the subject of the admissions and statements of the accused and the cautions and remarks thereon.

7. The charge, as a whole, was full and fair.

8. A special plea to the effect that the indictment was improperly delivered to the court, being brought into the court by the bailiff

of the grand jury, but not alleging that it had been tampered with or was out of the bailiff's hands from the time he left the grand jury room until he delivered it to the court, or that there was any improper conduct on his part, was properly stricken on demurrer.

December 15, 1885.

Criminal Law.　Murder.　Circumstantial Evidence. Admissions.　Charge of Court.　Indictment.　Bailiff. Before Judge BRANHAM.　Chattooga Superior Court. March Term, 1885.

To the report contained in the decision, it is necessary to add only that the grounds of the motion for a new trial were as follows :

(1.) Because the court erred in sustaining the demurrer to and overruling the special plea filed by the defendant. [See 8th division of decision.]

(2.) Because the verdict is contrary to law and evidence, and without sufficient evidence to support it, and is strongly and decidedly against the weight of the evidence.

(3.) Because the court refused to charge as follows : To authorize a conviction upon circumstantial evidence, the circumstances proved ought to connect the defendant with the criminal act according to the following rules :

(*a.*) The burden is upon the state to prove every single circumstance which is essential to constitute the crime, in the same manner and to the same extent as if the whole case had rested on the proof of each individual and essential circumstance, and a greater weight of evidence is required for the proof of a fact in a criminal than in a civil case.

(*b.*) It is essential that all of the facts proved should be consistent with the supposition of the defendant's guilt, and the fact alleged, that he is the person who did the killing, and if any one established fact be inconsistent with this supposition or hypothesis, the strength of the evidence is broken, and the hypothesis cannot be correct.

(*c.*) It is essential that the circumstances should be of a conclusive nature and tendency to authorize conviction on circumstantial testimony.

(*d.*) It is essential that the facts proved should, to a moral certainty, actually exclude every hypothesis but that of the defendant's guilt.

(*e.*) It is necessary that every fact and circumstance that is relied upon in the chain of evidence, invoked to establish the guilt of the defendant, should be clearly proved, and that the whole, when taken together, should, to a moral certainty and beyond a reasonable doubt, establish the guilt of the accused to the exclusion of any other reasonable hypothesis. A jury would not be authorized to convict except upon plain and manifest proof of defendant's guilt.

(*f.*) Circumstantial evidence ought to be acted on with great caution, especially where an anxiety is naturally felt for the detection of great crimes.

(*g.*) The possibility of reasonably accounting for the facts by accident or suicide must be excluded by the circumstances proved, and it is only when no other hypothesis will explain all of the conditions of the case and account for all the facts, that it can safely and justly be concluded that it has been caused by intentional injury    in other words, if the conditions of the case can be accounted for on the supposition of accident, or otherwise than by the intentional, unlawful and malicious killing of deceased by the defendant, then there will arise and exist such doubt in the case as to require the acquittal of defendant.

(*h.*) The total absence of any apparent motive must always operate strongly as a circumstance in favor of the accused.

(4.) Because the court charged the jury, " You are the judges of the law and facts; you take the law from the court and the facts from the witnesses. Apply the one to the other; weigh them and judge of them, and make up your verdict accordingly."—The objection was that this charge

confined the jury to the law only given them by the court, and to the facts only that were testified to by the witnesses from the stand, and excluded from their consideration facts from blood stains presented to them· on the defendant's clothing that·was exhibited by the state, and upon which defendant relied to rebut the hypothesis that he killed and carried and threw the body of the deceased in the creek.

∴(5.) Because the court charged, in connection and qualifications of its charge to the jury on the subject of doubt, "It (doubt) must arise out of the evidence, or for the want of sufficient evidence."

(6.) Because the court charged, in connection and qualification of its charge, upon the subject of admissions, " If an admission or statement was voluntarily made, you may consider it, with the other evidence, in making up your verdict."—The error alleged was, that this was too general, and assumed that an admission was made, and left the jury to determine only whether it was voluntary, and not also whether it was made at all.

(7.) Because the verdict is contrary to the following charge of the court : " The burden is upon the state, not only to prove that the defendant killed the deceased, but also to prove to the satisfaction of the jury, beyond a reasonable doubt, that he killed with the intent, at the time, to do so; and if the killing was the result of accident, the defendant would not be guilty."

(8.) Because the court, after charging the jury, " It is not necessary to prove a killing by positive evidence, or by the testimony of an eye witness, who actually saw the crime committed," added, "a defendant may be convicted on circumstantial evidence alone," without any explanation of the nature and quantity of circumstantial evidence required to authorize a conviction.

(9.) Because the verdict is contrary to the following charge of the court: "A person shall not be found guilty of any crime or misdemeanor committed by misfortune or

accident, and where it satisfactorily appears there was no evil design or intention to commit crime."

(10.) Because the court charged the jury as follows: "If you find that the defendant killed the deceased, then you cannot, outside of the evidence in the case, assume or suppose such killing to have been done by accident. The mere fact that accidents may happen in the careless use of fire-arms would not alone, aside from the evidence in the case, authorize you to find the killing was the result of accident."—The error alleged is that this charge is argumentative, and expresses the opinion of the court on the weight of the evidence in the case.

(11.) Because the court charged the jury: "If you find that the defendant killed the deceased, then the law presumes that the homicide was felonious, and this presumption would remain until it was removed by evidence or circumstances proven in the case."—This charge was calculated to mislead the jury, in that it indicates that the presumption of malice from the killing could only be rebutted by evidence introduced by the defendant, when it may be rebutted by the facts and circumstances proved by the state.

(12.) Because the court allowed W. D. Kellett to state in evidence what the defendant said in a conversation that he (Kellett) had with defendant,—counsel for defendant objecting upon the ground that Kellett was sheriff, and defendant was under arrest at the time under charge of killing the deceased, and that his statements were not freely or voluntarily made, to-wit, Kellett was allowed to testify that he asked defendant, "How many guns did you fire down there in the woods the day before that?' "How many guns did you fire below the bridge?" He said, "I never fired any in the woods; I only fired one in the cane patch."

DABNEY & FOUCHE; J. M. BELLAH, for plaintiff in error, cited 1 Chitty Cr. L., 325; 4 Bl. Com., 306; Arch. Cr. Pl.,

64; 1 Whart. Cr. L., §§500–1; Proff. Jur. Tr., §59 and cit.; 4 *Ga.*, 339; 45 Miss., 114; 47 *Id.*, 39; 30 *Id.*, 408; 50 *Id.*, 165; 52 Ala., 182; 35 *Id.*, 421–5; 28 Ark., 410; 19 *Id.*, 178; 59 Ill., 68; 8 *Id.*, 71; 39 *Id.*, 157; 46 Ind., 463; 42 *Id.*, 393; 21 *Id.*, 79; 18 *Id.*, 428; 19 *Id.*, 98; 23 *Id.*, 150; 6 *Id.*, 440; 1 Kansas, 313; 27 Cal., 65; 13 Fla., 651; 30 Tex., 404, 428; 2 Va. Cas., 527; 7 Humph., 155; 9 Yerg., 198; Waterman U. S. Cr. Dig., 327; Cobb's Penal Code, 213; 1 Starkie Ev., 572–4; 34 *Ga.*, 342; 38 *Id.*, 295; 46 *Id.*, 637; 22 *Id.*, 235; 3 Gr. Ev., §29 and notes, §134; 1 Starkie Ev., 565 (a); 2 *Id.*, 719; 1 Whar. Cr. L., 737, 750; Roscoe Cr. Ev., 15, 29, note.

CLIFFORD ANDERSON, attorney general, by brief; C. T. CLEMENTS, solicitor general; JOHN W. MADDOX, for the state, cited Code, §3916; 26 Humph., 155; 1 Kansas, 313; Cobb's Penal Code, p. 208; 1 Chitty Cr. L., 225; 33 *Ga.*, 257; 53 *Id.*, 196; 59 *Id.*, 308; 57 *Id.*, 102–7; 30 *Id.*, 869.

JACKSON, Chief Justice.

Two youths—one verging into manhood, the other a mere boy—were seen out hunting together. The elder carried a double-barrelled shotgun; the boy, a small single-barrelled shotgun. Each had a dog along with him. The elder returned safely home with dog and gun; the other, with his dog and gun, did not return. The agonized father and mother, with such neighbors as they could get to aid them, scoured the neighboring country in search of the lost boy, only in age just entering the twelfth year, and their only child. Vainly the woods were explored all night; the missing dog was whistled for and called for, as well as the lad whom he followed, and not until late in the afternoon of the next day was the mystery unravelled, and the body of the boy found in Chapel creek, a short distance from its flow into the Chattooga river. The back of his head was found shot almost away, a large hole made in, and shot were extracted from the face and the front parts of the head,

·such as a shotgun would carry; one of the pockets of his pantaloons was turned and emptied of its contents; there were some few dim drops of blood between the spot where the body was drawn out of the water and laid on the banks of the stream by the two men who found it, and a bunch of alder bushes some forty feet off, and near these bushes were a large pool of blood and some clods of brains on the ground, and two pocket-knives, one open, the other shut, and other trinkets identified as belonging to the murdered boy.   One of the alder stocks was cut off by a knife some three or four inches from the ground, and through other stocks shot had passed, mowing down some and tearing others, as they passed into the ground, where some shot were found, about in the places where shot would tear through the alder bush and strike the ground, as they passed the head of the unfortunate lad from a gun shot behind him a little way in his rear.   Some short distance nearer the river, another smaller pool of blood was found, and mixed with it was the hair of a dog, and in the river hard by, the dog, likewise shot, was found and pulled out, and identified as the boy's dog, his travelling companion in the hunt, and for whom father and mother had vainly whistled and called the night and morning before.   The boy's little gun has never been found; doubtless its weight holds it fast somewhere in the bottom of the creek or river.   There could have been no suicide by the poor boy; his arms and hands could not have pointed his gun where the load of shot entered the back of his head.   His own gun was gone; it was the only instrument he had which could have made the wound; had it done the deed, it would have been by his side; it could not have walked away.   The boy could not have walked a step after such a shot; instantaneous was his death, as all the doctors testified, and he could not have pulled himself forty feet to the creek and drowned himself and buried his gun there.

Nor could it have been accident.   Not accident of his

own, because he could not have reached the water from the pool of his own blood and brains, alone. Not accident by another's shot, because every circumstance tells of desperate deliberation. The deadly shot, right in the spot where it would most quickly produce death, the concealment of the body beneath the water, the killing the dog after the master, and burying him under water, too, lest the whining cur should tell instinctively the place where the boy he loved died, and the water under which the body lay;—neither accident nor suicide can account for this horrid death.

The irresistible conclusion is that the boy was murdered—heinously, shockingly murdered; and but a single issue is left for trial, and that is, who did the atrocious deed?

The jury have replied that the perpetrator is the youth of some sixteen summers, who left their homes that afternoon with the murdered boy, and who returned without the lad; that he returned also with his hands stained with the blood of the boy, and with the mark which God put on Cain's forehead, branded by truth, of which God is still the author, on his youthful brow. "Be sure thy sin will find thee out" Omniscience has declared, and His word is truth itself. The presiding judge who tried the case approved this verdict as the truth, and the youthful plaintiff in error says it is not; and as the last resort, save the mercy of the governor which may pardon the crime, he invokes the interference of this court to review the case again, examine the law and investigate the facts, and determine whether the truth has been ascertained and declared by the court below and his guilt legally established.

The great question is this: Do the circumstances proved and exhibited in this record show, beyond all reasonable doubt, the guilt of the accused; or, in other words, do the links in this chain of circumstances so twine around and bind the accused as to make the knot, tied by all combined, hold him as it can hold no other person; or, in the

language of the books, do these facts and circumstances, all put together, exclude every other hypothesis, except the one single conclusion that he is guilty of the murder of the boy?

The case is put on law as favorable as possible for the accused, and on account of his youth, we shall scan closely the facts, and see how they fit the law. If they hang loosely about it, the law, clothed with such a garment, will bid this youth go free; but if facts make such a suit as the law can wrap its folds around and move easily in clothing interwoven so with law and facts that none can see a thread amiss between the two, then, young as he is, he must abide the consequences of his crime. It relieves us that the kindness and mercy of the jury make his punishment, not the loss of life, but imprisonment for life.

The facts are that he went out to hunt with the boy, and no one but himself was ever seen with the lad; that when he returned without him, he was much agitated and excited, so much so as to excite attention from those he met, and to elicit the question, what was the matter with him; that he made some incoherent reply that he was sick; that he was seen coming hastily from the place where the dog's blood and hair were found, and where the smoke from a gun was seen to curl over the spot, and no other human being was seen that evening to come from that direction with or without a gun; that a person was seen to shoot the gun that made the smoke others saw, and the witness believed it was he, from his appearance at a distance; that two shots of a gun, with some ten or fifteen minutes between them, were heard in that direction, answering to the shooting the boy and then the dog; that he misrepresented the place where he last saw the boy and parted with him, locating it in a field on the other side of the river; that he did this the next day in reply to a question from the boy's mother, and soon thereafter went with another person over on the side of the river where the murder was committed, he asking this other person to go

with him, and then directing that person to go in a direction where the murder was not committed, whilst he himself went towards the locality where it was done, and returning and rejoining his companion soon, said to him that it was useless to search further in that vicinity; that he made a misstatement touching firing the gun; that blood was found on his clothing, with the appearance of having been washed so as to remove the stain; that the blood had penetrated to and marked his drawers, thus showing that it must have been something considerable on the pantaloons, before washed, to have stained the drawers. In this voluminous record, there are other less striking circumstances, all pointing to the plaintiff in error as the guilty person, and there is not one single circumstance which points to any other person.

Therefore, on the issue, whether or not this accused did the deed, there is no link in the evidence which points to any other person, or which fastens suspicion elsewhere; but all cluster around this unhappy youth, and hold him in their folds with the grip of an anaconda All things' are possible in the providence of the Almighty, and it is possible that he may not have been the slayer; but, beyond all reasonable doubt, the facts this record unfolds make him guilty. These facts consist with no other hypothesis. Turn and twist them as you please—shake them up as you would a kaleidoscope—and every shape the several stones assume when they settle, however various otherwise, impresses the eye of the searcher for truth with his guilt.

If, then, suicide and accident can, neither of them, consist with these circumstances, and some one is a murderer, which is shown in the former part of this opinion, the same circumstances can consist with no other, as that murderer, than this unhappy youth.

2. The requests to charge, we think, so far as they contain the full law, are covered by the charge as given. The doctrine that if a single link in a chain of circum-

stances relied on by the state be wanting, there can be no conviction, we cannot hold, with the able counsel for plaintiff in error, as expressing the true law, if we comprehend his meaning in the series of requests embodied all in one of his summaries of error. We prefer and endorse the charge given thereon by the presiding judge as follows: " When the guilt of the defendant depends on circumstantial evidence alone, the rule is that each separate fact or link which goes to make the chain of circumstances from which the deduction of guilt is sought to be drawn must be clearly proved, and a fact not clearly proved should not be considered as a part of the chain of circumstances, but should be rejected by the jury ; and the circumstances proved must not only be consistent with the defendant's guilt, but they must exclude every other reasonable hypothesis than that of the defendant's guilt. If any one or more of the circumstances relied on by the state are not clearly proven, and for this reason you reject one or more of the circumstances relied on, then you will inquire whether the other remaining circumstances proved—if they are clearly proved—are consistent with the defendant's guilt and inconsistent with any other reasonable hypothesis than that of defendant's guilt. All essential facts and circumstances necessary to show the commission of the crime, and so connect the defendant therewith as the party committing the act, must be proved."

We are unable to see how the entire law on this subject can be better put than in the foregoing words. They cover everything needful to be said touching the *quantum* of circumstantial evidence necessary to convict, and the clearness with which each portion of that *quantum* must be proved.

3. So with the other requests, numbered from one to eight, inclusive, if properly specified, when they all appear in the third ground of the motion, so as to be considered at all, in so far as they touch upon law necessary to be

considered by the jury in this case, we consider them all covered substantially in the charge.

4. The request numbered eight, particularly, is so modified and enlarged in respect to motive for killing, or its absence, as a circumstance, that it is herein copied in full and endorsed. The request is that " the total absence of any apparent motive must always operate strongly as a circumstance in favor of the accused ;" the charge is : " You may inquire whether there was any motive on the part of the defendant to induce him to take the life of the deceased, and if there was any motive, what that motive was. If you find there was no motive, on his part, to commit the act, you may consider it, especially if the evidence leaves the defendant's guilt at all doubtful, in deciding whether the defendant is guilty or not. Yet if the evidence shows the commission of the crime, and you are satisfied from the evidence, beyond a reasonable doubt, that the defendant committed it with malice aforethought, either expressed or implied, and if the circumstances are consistent with his guilt and inconsistent with any other reasonable hypothesis than that of his guilt, then, though the evidence may not disclose a motive, you would be authorized to find the defendant guilty."

5. The exceptions to various portions of the charge are, in our judgment, unfounded of themselves, or immaterial or unhurtful, when read with the rest of the charge and considered therewith.

6. Nor was there error in admitting as evidence various statements of defendant, especially those to the sheriff, denying having shot any gun where the firing was heard, there being no evidence of improper conduct in that officer in exciting the slightest fear or dimmest hope; nor in the charge on the subject of admissions and statements of the accused and the cautions and remarks thereon.

7. Indeed, considering the entire charge, it may be said that it covered the whole case fully and fairly, and is one of the best of the very able judge who delivered it; and

thus we reach the conclusion that the verdict is not contrary to evidence or to law.

8. The special plea, to the effect that the indictment was improperly delivered to the court, it being brought into court by the bailiff of the grand jury, without any allegation of its having been tampered with at all, or being out of the bailiff's hands at all, from the moment he left the grand jury room till he delivered it to the court, was not improperly overruled. The oath prescribed for the bailiff of the grand jury contemplates such a delivery of indictments from the grand jury to the court (Code, §3716); and inasmuch as the plea does not intimate any improper behavior by the bailiff, or the slightest hurt to the defendant, we decline to reverse the judgment sustaining the demurrer to it. It is true that the practice, until within comparatively a short time, has been different, the entire jury coming before the court to return the bills of indictment; and such, we believe, was the English practice. But unless some misconduct by the bailiff be charged, or some hurt to the defendant, we do not think that the indictment should be quashed and the verdict set aside, and the whole proceeding begin *de novo*

Judgment affirmed.