## 62599. BAXTER et al. v. THE STATE.

QUILLIAN, Chief Judge.

Defendants Roy Baxter, Dale Moody and Irby Moody were jointly indicted and tried for two counts of third degree arson. They were acquitted of Count 2 and appeal their convictions of Count 1. *Held:*

1. Defendants claim the trial court erred in denying their motion for directed verdicts.

The state's evidence was that on January 17, 1981 there was a high risk of fire in Long County and fire fighting personnel were putting out numerous fires. That afternoon, three of these personnel, Combs, H. Futch and M. Baxter met and stopped in their separate vehicles on a back county road, blocking the road as they talked. The three defendants approached in a blue Ford Torino automobile, stopped and sounded the horn. The Torino was being driven by defendant Irby Moody and was owned by defendant Dale Moody. Before the three firefighters could move out of the way, the Torino turned around and went back the way it had come. In a few minutes Combs and Futch drove along the road in the direction in which defendants had gone. When they came to a T-intersection of the road they saw a small fire which appeared to have just started. This fire was the subject of the allegations of Count 2. Baxter had passed that way a few minutes before on the way to meet with the other two and saw no fire there at that time. Futch stayed to put out the fire and Combs continued on the road to locate the defendants, whom Futch suspected of having set the fire. Coming around a curve, Combs observed the Torino stopped in the road with the driver's door open and two passengers sitting in the center and right side of the front seat. In the plantation about 35 feet off the road was a person wearing a brown checked shirt. Irby Moody was identified as driving the car shortly before and wearing a brown checked shirt. As Combs drove up

the person in the center of the seat moved behind the wheel and the Torino was driven away. The man in the plantation disappeared from his view. Combs drove on in the direction in which the car had gone and came to Highway 301. At that point, M. F. Futch, a state forest ranger, met Combs as the Torino came into view on 301 and the ranger followed it. Combs went back to where the Torino had been stopped and observed two fires burning in the area where he had seen the man out of the car. These fires were the basis of Count 1. After Ranger Futch followed the Torino for a time it stopped at the side of the road. Futch stopped and talked to them. It was then about 4:30 p.m. and not very long after the fires had been discovered. Baxter was driving the car with Dale Moody as a passenger. At first they denied that anyone else had been with them and then admitted that Irby Moody had been with them but had left them an hour and a half to two hours earlier on 301. Futch asked them to wait until the deputy sheriff arrived. They said they would and volunteered more than once that they had not set any fires. After about five minutes they said they would wait no longer and drove away. In Futch's opinion, both had been drinking and were intoxicated.

After H. Futch had put out the fire at the T-intersection, he rode with the deputy sheriff looking for the Torino. They found it parked at a house on 301 about one to one and a half miles from where the fires were found. There was no response to their knocking at the door of the house. Irby Moody then came walking up to the house on Highway 301. He said that he had not set any fires. In response to the deputy's radio call, Ranger Futch came to the house and talked to Irby. When asked why he was walking, Irby said that he had been hunting, although not dressed for it, and that his car had broken down. Irby accompanied the deputy and the ranger to show them where his car was back in the woods. There was no car where Irby said it was nor any sign of it having been there. Irby thereupon stated that he had lied to them about his car being in the woods and again volunteered that he had set no fires. He said he had been with Dale Moody and Baxter earlier but had left them about 11:30 that morning on Donald Highway because they were drinking. When they returned to the house where the Torino had been parked it was gone. Irby was taken home as it was getting dark. After dark a car which looked like the Torino was seen going to Irby's home.

Ranger Futch suspected the defendants of having set the fires. In his opinion the defendants were not truthful with him; Irby about his car being broken down and all of them about when Irby had left the other two as there was a considerable discrepancy between the times they gave.

Blocker testified that he assisted in putting out fires on January

17. At about three p. m. on that day he was driving down an uninhabited three mile stretch of back road and observed Dale Moody's Torino, with which he was very familiar, pass him going the opposite direction with two or three persons in it, one of whom was wearing a wide brimmed hat. Irby Moody was identified later that day wearing such a hat. After he passed them he discovered and either put out or reported five separate fires along the road the Torino had traveled. The farther he went the larger the fires were. Prior to discovering the fires he saw no other traffic on the road.

Sometime between January 1st and 17th, Robert Moody discovered a fire along a road he believed had been set because it was burning in five different places. Before coming upon the fire he saw a two tone blue Ford Torino, parked about 400 yards from the fire, which reminded him of the two tone blue Ford Torino owned by his cousin, defendant Dale Moody. After this fire was put out, Dale and Irby Moody came up to the scene of the fire driving a blue Torino.

The defendants presented no evidence and were acquitted of setting the fire found at the T-intersection. They were convicted of setting the fires found where the Torino was observed stopped and a man in a brown checked shirt out in the plantation.

Defendants argue that this circumstantial evidence did not exclude every reasonable hypothesis other than guilt, nor overcome the presumption that the fires were accidental or providential, rather than deliberately set.

As to each count, fires were discovered which experienced fire fighters believed were not accidental or providential. In each instance fires were known not to exist prior to the defendants being at the scene and found shortly after they left. When first approached by Combs where their car was stopped in the road with one of them out in the field, all of the defendants fled. When questioned by Ranger Futch the defendants were evasive and contradictory concerning their actions and without being accused or questioned on that subject stated more than once that they had not set any fires. Blocker testified that earlier on the same day he had observed a series of five fires along a lonely stretch of road shortly after seeing defendant Dale Moody's car come down that road with two or three persons in it. One of them was wearing a hat of the description Irby was seen wearing later that day. Robert Moody testified that sometime prior to January 17 a Torino identical to defendant Dale Moody's car was seen parked on a road 400 yards from where a series of fires appeared to have been set along the road. M. Baxter testified that shortly after the fires had been put out, Dale and Irby Moody drove up to the scene of the fire in a Torino.

"In reviewing the denial of a motion for directed verdict, the

proper standard to be utilized by the appellate court is the 'any evidence' test. [Cits.]" *Smith v. State,* 155 Ga. App. 657 (3), 659 (272 SE2d 522).

As there is some evidence of guilt, we cannot say as a matter of law that this evidence demands a verdict of acquittal or overcomes a presumption that the fires were not deliberately set. Code Ann. § 27-1802. Compare, *Jackson v. State,* 157 Ga. App. 580 (1) (278 SE2d 152); *Andrews v. State,* 156 Ga. App. 734 (7) (275 SE2d 782). Whether the evidence excludes every other reasonable hypothesis except guilt is for the jury. *Orr v. State,* 145 Ga. App. 459 (4) (244 SE2d 247).

The trial court did not err in denying the motion for directed verdicts.

2. Defendants assert that it was error for the trial court to admit evidence of other instances of fires being set without identifying them as the perpetrators or showing sufficient similarity or connection between such acts and the offenses charged.

" '[B]efore evidence of independent crimes is admissible two conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter.' [Cit.]" *State v. Johnson,* 246 Ga. 654 (1), 655 (272 SE2d 321).

Circumstantial evidence may be used to establish a prior similar offense. *Allanson v. State,* 235 Ga. 584 (1) (221 SE2d 3). Whether the circumstantial evidence is enough to show defendants to be the perpetrators of the other offenses is a matter for the jury to decide. *Smith v. State,* 154 Ga. App. 497 (1), 499 (268 SE2d 714).

In each instance of the uncharged offenses fires appeared to have been set and defendants' automobile was seen in the vicinity of the fires on lonely roads shortly before or after the fires were discovered with two or three persons in it. In one instance, two of the defendants came up to the location of a fire after it had been put out. We find this sufficient similarity between the uncharged offenses and those charged that proof of the former tended to prove the latter.

There was no error in admitting such evidence.

3. The remaining enumeration that there was no evidence to sustain a charge on flight is without merit. The witness Combs testified that he came upon defendants' car with one of the occupants out in the plantation. As Combs approached, the two in the car drove away and the man in the plantation disappeared. Shortly thereafter Combs discovered fires where the man in the plantation had been seen. Defendants Dale Moody and Baxter also left after being asked by Forest Ranger Futch to wait until the deputy sheriff came.

"[E]vidence of flight (is) admissible whether it occurs at the time of the incident, shortly thereafter, when (the defendant) becomes a suspect, (or) when (the defendant) thinks he is about to be arrested . . ." *Johnson v. State,* 148 Ga. App. 702 (1), 703 (252 SE2d 205).

Defendants also contended that the charge on flight, which stated that an inference of guilt may be drawn from evidence of flight but is subject to explanation, was an implied comment on defendant's right to remain silent.

In *Anderson v. State,* 153 Ga. App. 401 (4) (265 SE2d 299), on a claim that the charge on flight was burden-shifting, it was held that it was not, just as the charge on the unaccounted for recent possession of stolen goods was not burden-shifting. " 'Although it places some duty on defendant to go forward with the evidence, it does not shift from the state the ultimate burden of persuading the jury of his guilt beyond a reasonable doubt.' [Cits.]" Id at 404.

We likewise find that the charge on flight was not a comment on the defendants' right to remain silent by reference to a case in which the charge on unaccounted for possession of recently stolen goods was held not to be such a comment. " 'It was not erroneous to charge this principle, where the evidence showed the possession of stolen property, even though the appellant did not account for his possession by evidence or statement. [Cit.] The charge cannot properly be construed as being a comment on the appellant's failure to testify or make a statement.' " *Horton v. State,* 228 Ga. 690 (1), 692 (187 SE2d 677).

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 29, 1981 —
REHEARING DENIED OCTOBER 27, 1981 —

*Jeffery L. Arnold,* for appellants.
*Dupont K. Cheney, District Attorney, Douglas A. Datt, Assistant District Attorney,* for appellee.