## 73231. HENDERSON v. THE STATE.
### (356 SE2d 241)

Beasley, Judge.

Henderson, with Murray Gordon and Al Ikenberg, was charged with conspiracy to defraud the state (OCGA § 16-10-21 (a)) and two counts of theft by taking (OCGA § 16-8-2). Henderson was individually charged with two additional counts of theft by taking (OCGA § 16-8-2). All charges arose from what has become known as the "Capitol photography scandal." Defendant Henderson appeals from his conviction and sentence on all five counts. Ikenberg pled guilty and Gordon's conviction, in a separate trial, was recently affirmed. *Gordon v. State*, 181 Ga. App. 391 (352 SE2d 582) (1986), cert. granted February 18, 1987.

1. Defendant asserts error in the trial court's failure to grant his motion to quash the indictment because of alleged improper return because it was taken from the grand jury room to the courtroom to be returned not by the grand jury bailiff but by a deputy clerk.

The evidence on the motion was conflicting. The deputy clerk stated that she received the indictment from the bailiff outside the grand jury room and took it on the elevator in the company of the bailiff and others to the courtroom, where she handed it to the bailiff for return to the court. The district attorney stated that the indictment remained in the possession of the bailiff until it was properly returned in the courtroom in open court.

This is not a case where there is contention concerning the return in "open court," the subject of many decisions, but one concerning the possession of the indictment. The grand jury bailiff, by virtue of his oath, is empowered to take possession of the indictment from the grand jury and return it in open court without their presence. OCGA § 15-12-69; *Davis v. State*, 74 Ga. 869, 882 (1885); *Danforth v. State*, 75 Ga. 614, 620 (1885); see *Cadle v. State*, 101 Ga. App. 175, 180 (113 SE2d 180) (1960). The prosecutor may not do so. *Bowen v. State*, 81 Ga. 482, 484 (8 SE 736) (1888). There is no case dealing with the precise point at issue here, although it is established that the clerk does have a part to play in the proper return of the indictment and, in

open court, may take the indictment from the bailiff and hand it to the judge. See *Wilson v. State*, 215 Ga. 446 (111 SE2d 32) (1959).

It is not necessary for us to decide whether, assuming the facts to be as defendant alleges, the motion was properly denied, for this case involves disputed facts which were resolved by the trial court in favor of the validity of the indictment. The trial judge was authorized to find that the indictment remained in the custody of the bailiff. This finding was not clearly erroneous and, on appeal, will be upheld. See *Cunningham v. State*, 255 Ga. 727, 730 (2) (342 SE2d 299) (1986).

2. Defendant contests the admission by the court of a statement made in 1978 to a private investigator concerning theft by a Fred Henderson of camera supplies from Crown Camera. While numerous grounds for objection were stated in the trial court, the ones argued on appeal are the following: a) failure to identify the defendant as the Fred Henderson who was interviewed; b) failure to comply with OCGA § 24-9-69; c) denial of defendant's Georgia constitutional right to confrontation, Art. I, Sec. I, Par. XIV, and his federal Sixth Amendment right to confrontation; d) insufficient proof of the other crime, and failure to demonstrate that proof of the 1978 incident tended to prove the crime charged.

The charges against defendant and the others involved the dealings of the three individuals and their companies with the state. All three defendants were charged with conspiracy against the state during 1976 through 1984. They were all charged in Counts 1 and 2 with theft by taking via invoices submitted through Crown Camera (Ikenberg's company) and Photo Service Company (Gordon's company) for processing, printing, and reprinting of color film. Henderson alone was charged in Counts 4 and 5 with theft by taking for invoices submitted by his company, Custom Finishers, for the processing, developing and printing of black and white film.

The evidence showed that Crown Camera, purchased by Ikenberg in 1976, began dealing with the state and provided supplies for the House and Senate photographers as well as the House Information Office. The House and Senate photographers did mostly color work, while the majority of the House Information Office's work was black and white. Although the capitol contained a black and white processing lab, all color processing and printing was originally handled through Crown. Gordon set up Photo Service to handle the "excess" color processing and printing, although Toco Color Labs did all of the processing and printing that was billed through both Crown and Photo. Henderson was also a photographer and began working for Crown prior to 1973, when he stopped working for Crown and began working for Gordon. Gordon was and had been for several years a commission salesman for Crown.

Henderson, while working for Gordon, attended the legislature

when in session and picked up and delivered to Toco the film from all the photographers. He also assisted the House photographer by taking informal photos.

In 1979 or 1980, Henderson began submitting his own bills to the legislative fiscal office, originally using the name "Custom Printers" and then incorporating as Custom Finishers in 1980. Custom dealt only with black and white. Henderson testified and stated that he "just started" assisting the House photographer and never had a contract or agreement concerning what Custom or he would charge. In 1983, he told the governor's new photographer that he would charge her his cost plus 25% to take care of her color processing and printing. There was also evidence that in 1982, when defendant itemized his Custom black and white invoices, he was charging $1.50 per 8″ x 10″ print and $3.00 to process a roll of film. Henderson ceased itemizing his invoices in late 1982 and began submitting invoices reflecting merely "processing" or "printing" without any quantities. He acknowledged that his invoices were inflated and reflected more prints and processing than he did but explained that the overage was to cover his $80 per hour fee for time spent taking pictures. He had not told anyone with the state about this $80 charge. The evidence showed markups on Crown, Photo, and Custom invoices of 400% or greater.

The 1978 incident arose when Ikenberg, owner of Crown, apparently had polygraph examinations performed on his employees and those with access to his store. At this time, defendant was technically employed by Gordon, commission salesman for Crown, and had unlimited access to the store. While the private investigator did polygraph defendant, no reference was made to that during his testimony. Only defendant's admission that he had stolen small amounts of supplies over the three previous years and his later statement that he could not change his story were presented to the jury. At the time of the proffer of the investigator's testimony, the state set out two purposes for the evidence: 1) that it might explain the discrepancies between what was billed to the state and what was delivered, and 2) that it would show the conspiracy because although Ikenberg had been given the report by the investigator, he continued to allow defendant unfettered access to his store. The rationale of the state's theory was that all of the conspirators were making so much money from the fraud against the state that minor theft was not a concern.

In admitting the testimony, the court treated the incident as a like act and instructed the jury that it was to be considered only "under the provisions of law that where knowledge, common design, modus operandi, motive, intent, good or bad faith, bent of mind, plan, scheme, and course of conduct, identity or other matters dependent upon a person's state of mind, are involved as material elements for

the offense for which he is on trial . . . ."

While similarity of the charged crime and the "like act" has been the focus of many cases, similarity is "not the only factor, nor is it necessarily the controlling factor. 'The ultimate issue in determining the admissibility of evidence of other crimes is not mere similarity but *relevance to the issues in the trial of the case.*' [Cits.] *Depending upon the purpose for which the extrinsic offense is offered, 'the state may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a logical connection between crimes which are essentially dissimilar. [Cits.]'* " *Felker v. State,* 252 Ga. 351, 359 (1 a) (314 SE2d 621) (1984). As noted by the Supreme Court in a footnote in *Felker,* "defendants' knowledge that they did not have permission to take a car can be proven by evidence that they murdered the owner." *Felker,* supra at 359, fn. 2.

Here, a logical connection between the 1978 incident and the charged conspiracy was shown. The incident occurred during the conspiracy period; the "victim" of the 1978 theft was a co-conspirator in the charged crime; even after receiving notice of defendant's defalcations, Ikenberg continued to allow defendant access to the store and no one verified what was taken by him for delivery to the legislature; the store manager from 1981 to 1984 was told by Ikenberg that defendant and Gordon were responsible for keeping up with what was taken by Henderson and he, the manager, should not be concerned with it; the store manager from 1972 to 1980 who questioned Ikenberg about the large amounts being billed to the legislature by Crown for Gordon was told that that account was paying his salary and not to mention it again.

Although Ikenberg and Gordon were not tried with Henderson, the conspiracy charge was at issue, and acts involving or emanating from the co-conspirators were relevant to the conspiracy charge against defendant. *Daniels v. State,* 58 Ga. App. 599, 604 (2) (199 SE 572) (1938); *Nelson v. State,* 51 Ga. App. 207, 211 (180 SE 16) (1935). In determining whether a conspiracy existed, the jury was authorized to consider "acts and conduct of the parties, and from the nature of the acts done, the relation of the parties and the interests of the alleged conspirators." *Hewitt v. State,* 127 Ga. App. 180, 183 (4) (193 SE2d 47) (1972). The 1978 defalcation did go to show the relationship between Ikenberg and defendant and was relevant to the conspiracy charge, answering defendant's objection (d). The investigator's testimony also was sufficient to show the theft. If an uncharged crime is relevant, as this one is, it need not be proven beyond a reasonable doubt. *Kilgore v. State,* 251 Ga. 291, 297 (3 c) (305 SE2d 82) (1983), nor need there be a charge or conviction relating to the incident. *High v. State,* 153 Ga. App. 729, 731 (2) (266 SE2d 364) (1980).

Defendant next contends that there was insufficient evidence that the 1978 incident involved him. The investigator was unable to identify defendant at trial, and was only able to say he interviewed a "Fred Henderson" with Crown Camera. Other evidence, however, proved that defendant was working for Gordon, the salesman for Crown, and was allowed free run of the store during that time. There was no indication that there was any other Fred Henderson associated with Crown. Defendant testified and did not contest that he was the Fred Henderson interviewed. "Circumstantial evidence may be used to establish a prior similar offense. [Cit.] Whether the circumstantial evidence is enough to show defendants to be the perpetrators of the other offenses is a matter for the jury to decide. [Cit.]" *Baxter v. State*, 160 Ga. App. 181, 184 (2) (286 SE2d 460) (1981).

Defendant also contends that, because the investigator failed to identify defendant as the Fred Henderson who made the statement he was deprived of his right to confrontation under the Sixth Amendment. In his brief, defendant raises also the state constitutional right, but no objection on this basis was made below and it will not be considered for the first time on appeal. *McKissic v. State*, 178 Ga. App. 23, 24 (3) (341 SE2d 903) (1986).

The federal argument, although not clear, apparently is that the state, by use of OCGA § 24-9-69, was able to elicit a particular portion of the defendant's statement while excluding that portion of the statement in which he denied the theft, thereby depriving him of the right to confrontation.

OCGA § 24-9-69 states that "[a] witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed or *shall be willing to swear positively from the paper.*" Because the investigator was unable to recall the incident, but did identify the memo from which he testified as having been prepared at his direction and at a time when the events were fresh in his mind, he was allowed to testify from it as to the defendant's statements pursuant to OCGA § 24-9-69. Thus, the state complied with the requirements concerning the *admissibility* of the testimony concerning the statement, although this had nothing to do with the statement's relevance, which was dealt with separately by the trial court and by this court supra. See *Kines v. State*, 67 Ga. App. 314 (1) (20 SE2d 89) (1942).

Because the witness was present and available for cross-examination, there has been no violation of defendant's Sixth Amendment right. The confrontation clause guarantees the defendant in a criminal trial the general right to cross-examine the witness, that being the principal means by which the believability of a witness and the truth of his testimony are tested. *Hines v. State*, 249 Ga. 257, 259 (2) (290 SE2d 911) (1982); see *Higgs v. State*, 256 Ga. 606, 608 (6) and (7) (351

SE2d 448) (1987); *O'Kelley v. State,* 175 Ga. App. 503, 507 (2) (333 SE2d 838) (1985).

The use by the witness of the memorandum in his testimony did not preclude a thorough and sifting cross-examination of him. See *Lester v. S. J. Alexander, Inc.,* 127 Ga. App. 470, 473 (2) (193 SE2d 860) (1972). The fact that defendant chose not to elicit the denial of the theft from the witness was a strategic choice of his and is no basis for reversal. This is not a situation where cross-examination is thwarted by the court's refusal to let the defense examine a memorandum used to refresh a witness' recollection pursuant to the first clause of OCGA § 24-9-69. *Baxter v. State,* 254 Ga. 538, 548 (18) (331 SE2d 561) (1985). Defendant had a copy of the document being used by the witness and could have inquired concerning the exculpatory denial by defendant. This would not have resulted in the polygraph examination coming into evidence, which would not be admissible absent agreement by the defendant and the state. *State v. Chambers,* 240 Ga. 76 (239 SE2d 324) (1977).

The objection made at trial was that "the fact of some polygraph in past history somewhere, . . . wouldn't be admissible." It is only on appeal that defendant makes the argument that the *statement,* which was not part of the questions that defendant was polygraphed on, is inadmissible because it resulted from a polygraph. Objections not made below will not be considered for the first time here. *McKissic v. State,* supra at 24.

3. Defendant, in his third enumeration, contends that the trial court erred in failing to give a charge on theft by deception since, according to defendant, that was the theory upon which he was tried. A review of defendant's requests to charge reveals that no request was made of the court to charge theft by deception. Also, after the court's charge, the court specifically inquired of counsel for defendant if there were any objections to the charge. Only two were made, neither having to do with the court's failure to charge theft by deception. Defendant did not reserve any further objections for appeal and may not now complain. "Clearly, it is the law of this state, even in criminal cases, that if the trial court asks if there are any objections to the charge given, counsel for the defendant must either state his objections or reserve the right to make such objections on motion for new trial or on appeal or waive any such objections." *Allen v. State,* 177 Ga. App. 600, 603 (340 SE2d 246) (1986); *Jackson v. State,* 246 Ga. 459 (271 SE2d 855) (1980).

We note that the correctness of the charge given was determined in *Gordon v. State,* supra.

4. Defendant's enumerations number 4 and 5 claim that sentencing him on both Counts 2 and 3, and on both Counts 4 and 5, was error because the incidents in each set constituted single transactions

for which only one sentence was proper. This argument has also been decided adversely to defendant in *Gordon,* supra (3).

5. Defendant sought mistrial during the prosecutor's closing argument. While two grounds were stated below, only one is argued on appeal, a statement concerning Billy Murphy, and only it will be considered. Court of Appeals Rule 15 (c) (2).

Billy Murphy, the House photographer and a friend of defendant, was called by the state. He testified that in October 1982 he received a $1,500 personal check from defendant. Defendant ceased itemizing his Custom invoices in November 1982. Murphy and the defendant both testified that the check was the result of defendant's CPA advising him to sell some stock in Custom to someone he trusted, solely for tax purposes, and then to repurchase it. The sale to Murphy was effected by periodic payments by him to defendant of unknown amounts of cash in the total approximate amount of $500 to $700. No record was kept by either Murphy or Henderson of these amounts. Both testified that the check represented the repurchase and had nothing to do with the cessation of itemizing.

During his closing argument, defendant's counsel argued as follows: "did you notice now you're entitled to draw conclusions and deductions from what you see and hear in this courtroom? Did you conclude that the State put that evidence in because they believed Mr. Murphy's story or they have put that evidence in because they wanted to embarrass him? Did you notice the manner in which he was interrogated on this witness stand? *Did he [the prosecutor] give him an opportunity to explain in such a way that he wanted you to belief [sic] it? No.*"

The prosecutor then, in his argument, stated: "Now, Mr. Spruell's comment about the way I asked the questions, he said I asked the questions as if I didn't believe Mr. Murphy, and *I confess to you I didn't.* . . . And Mr. Murphy said that's the story, that's the story he testifies to, but is what Billy Murphy told you true?"

Defendant immediately objected and moved for a mistrial, on the ground that the prosecutor "has stated his personal beliefs in his argument, . . ." in that it was improper for the prosecutor to put up a witness and then state his personal belief as to the credibility of the witness. The court agreed and, although not granting the mistrial, immediately instructed the jury that they were the ones trying the case, and "you will wholly disregard the statement of Mr. Kohler, counsel for the State, as being both irrelevant and improper. What Mr. Kohler believes in this case is not relevant and . . . I want it to be foreign to your considerations . . . You are to wholly disregard it and give it no weight in your consideration whatsoever." Immediately upon resuming his argument, the prosecutor apologized to the jury, saying "I . . . was wrong to say that, and the judge was correct in the

reprimand of me." Were the court's actions sufficient?[1]

The refusal to grant a mistrial because of the improper remarks of the prosecutor is within the discretion of the trial court pursuant to OCGA § 17-8-75, and the decision will not be disturbed on appeal absent manifest abuse. *Harrell v. State*, 253 Ga. 474, 476 (4) (321 SE2d 739) (1984); *Welch v. State*, 251 Ga. 197, 200 (6) (304 SE2d 391) (1983). This is true even where the prosecutor expresses his opinion on the ultimate issue, the guilt of the defendant. *Shehee v. State*, 167 Ga. App. 542, 544 (3) (307 SE2d 54) (1983). As held in *Shehee*, "in passing on a motion for a mistrial because of an improper comment by the prosecutor, the trial judge may take such action as in his judgment will prevent harm to the defendant, and a new trial will not be granted unless it is clear that such action failed to eliminate the statement from consideration by the jury." The court took immediate action and instructed the jury not to consider the opinions of the lawyers in arriving at their verdict. Under the circumstances of this case, we cannot say the court abused its discretion in not granting a mistrial.

During oral argument, defendant also argued that the trial court's failure to rebuke the prosecutor made the curative instructions insufficient to cure the error. Assuming that the court's actions did not technically amount to a rebuke, they were still sufficient to correct the problem caused by the remark. *Ward v. State*, 252 Ga. 85, 88 (2) (311 SE2d 449) (1984).

6. In enumerations 7 and 8, defendant argues that the evidence was insufficient in two respects: 1) that the state did not prove that the monies were "tax monies" and 2) that the evidence was insufficient to convict defendant on all counts. Although the enumeration states that all counts are in issue, only Counts 2 and 3 are argued and only they will be considered.

In determining whether the evidence supports the conviction, this court must ask whether a rational trier of fact could have found the essential elements of theft by taking beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979); *Gordon v. State*, supra. In so doing, we must view the evidence in the light most favorable to the verdict, construing all inferences and presumptions in favor of it. *Harris v. State*, 234 Ga. 871, 873 (218 SE2d 583) (1975); *Boyd v. State*, 168 Ga. App. 246, 248 (1) (308 SE2d 626) (1983).

The sufficiency of substantially the same evidence against Gordon has recently been found to be sufficient under this standard.

---

[1] While defendant argues that the state had intentionally developed a trial tactic that would allow it to put Murphy up and then express disbelief in his truthfulness, the record does not support such an argument.

*Gordon v. State*, supra (1). While defendant contends he had nothing to do with the billing procedures of Crown (Count 2) and Photo Service (Count 3), the evidence shows extensive participation by him in the business of both: he did the bulk of the deliveries for both companies; he was the primary representative of both companies at the legislature; he destroyed the Toco billing information for the legislature's work. Without him, there would have been nothing for which Crown and Photo Service could have billed the legislature.

Regarding the element of "tax monies" there was sufficient evidence of this fact before the jury. The bills of all the subject companies were paid from monies in the General Fund of the state, and the greater percentage of that fund was made up of tax monies. Defendant's own witness testified that 98% of the General Fund was constituted of tax monies.

7. Enumeration 9, that the conspiracy charge merged with the substantive charge, was decided adversely in *Gordon v. State*, supra (2).

8. Prior to trial, defendant moved for in camera review of the state's file in order to determine if there was materially favorable evidence with regard to defendant's guilt or punishment. With the consent of the state, the GBI investigative file was made part of the record and was reviewed by the court pursuant to the mandate of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). After trial, defendant learned that the rough notes of GBI agent Buckner had not been turned over. A hearing was held and Ms. Buckner testified that she dictated the typed "formal" file from her rough notes and there was nothing contained in these notes that did not appear in the formal report. These notes have been included in the record on appeal. Defendant alleges that the trial court erred in failing to compel the state to turn over "all files requested," apparently referring to the rough notes of Ms. Buckner.

*Brady* does not require State agents to retain rough notes made in the course of their investigation. *Hambrick v. State*, 175 Ga. App. 207, 212 (11) (332 SE2d 907) (1985); *Callahan v. State*, 179 Ga. App. 556, 562 (3) (347 SE2d 269) (1986). Thus, it is not error for the trial court not to require these notes to be turned over for inspection. In this case, the notes are part of the record. There is nothing in them that does not appear in the formal report. Further, they contain nothing exculpatory and defendant has failed to show any *Brady* violation. *Chenault v. State*, 234 Ga. 216, 220 (3) (215 SE2d 223) (1975); *Ramsay v. State*, 175 Ga. App. 97, 98 (3) (332 SE2d 390) (1985).

9. Defendant filed three documents labelled "demurrers" before trial. The first, labelled "General Demurrers," alleged failure to sufficiently set out a charge of conspiracy pursuant to OCGA § 16-10-21 and that the indictment did not charge any offense against the law of

Georgia. The second, labelled "General and Special Demurrers," without specific reference to any part of the indictment, claimed that it was arranged to "obscure the true issues of the case," was "insufficiently explicit and irrelevantly distracting" and was loaded with "psychological harpoons and inflammatory verbocity." The third, labelled "Special Demurrers," claimed prejudice with reference to a specific paragraph which referred to an alleged "confession" to stealing cash from Crown Camera. This reference was removed from the indictment, apparently pursuant to this demurrer.

On appeal, defendant argues only that Count 1, paragraphs 9-12, were inflammatory and unfairly prejudicial assertions, apparently arguing that the court's failure to grant his second demurrer was error.[2]

While a general demurrer challenges the very validity of the indictment, a special demurrer objects merely to its form or seeks more information. *State v. Eubanks*, 239 Ga. 483, 485 (238 SE2d 38) (1977). If no prejudice is shown to have accrued to the defendant by the overruling of the special demurrer, any error may be harmless. *State v. Eubanks*, supra at 488. Here, the acts complained of in Paragraphs 9-12 all relate to Custom Finishers, the false invoices submitted for Custom, and the $1,500 check paid to Billy Murphy. Even assuming that these acts were not part of the conspiracy, i.e., that defendant acted totally alone concerning these acts, the acts were relevant to the charges contained in Counts 4 and 5 and were properly considered by the jury.

"When an appellate court reviews the merits of a special demurrer after trial has been held and no prejudice to appellant has occurred even though the indictment is not perfect, 'reversal is a mere windfall to defendant and contributes nothing to the administration of justice. [Cits.]' As appellant has shown no prejudice resulting from the alleged defect in the indictment, we find no error." *Hambrick v. State*, 175 Ga. App. 207, 209 (4), supra.

*Judgment affirmed. Birdsong, C. J., McMurray, P. J., Carley and Pope, JJ., concur. Deen, P. J., and Banke, P. J., concur in the judgment only. Sognier and Benham, JJ., dissent.*

BENHAM, Judge, dissenting.

I must respectfully dissent from the affirmance of appellant's convictions for theft by taking (Counts 2 and 3) for two reasons.

1. In addressing appellant's enumeration of error questioning the sufficiency of the evidence presented against him, the majority opines that the evidence presented against appellant was substantially the same as that recently found by this court to have been sufficient in

---

[2] Since defendant does not now argue that Count 1 failed to properly allege conspiracy, there is nothing before us concerning the General Demurrer filed below.

the separate trial of appellant's co-indictee. See *Gordon v. State*, 181 Ga. App. 391 (352 SE2d 582) (1986), cert. granted Feb. 18, 1987. In *Gordon*, supra, I filed a dissenting opinion in which I presented my view that in order to convict Gordon of theft by taking, the State had chosen to attempt to prove he had committed theft by deception and had failed to do so, causing Gordon's convictions for theft by taking to fall due to a lack of sufficient evidence to support them. I have the same difficulty in the case at bar: I fail to find evidence that the State's property was taken from it against its will (*Stull v. State*, 230 Ga. 99 (1) (196 SE2d 7) (1973); that a false impression as to an existing fact or past event was created by appellant or his co-conspirators and not corrected by them (OCGA § 16-8-3 (b) (1) and (b) (2); *Sassoon v. State*, 138 Ga. App. 172, 176 (225 SE2d 732) (1976); *Croy v. State*, 133 Ga. App. 244 (1) (211 SE2d 183) (1974)); or that the State entered into a definite contract with appellant or his co-conspirators. OCGA § 16-8-3 (b) (5). In light of the lack of evidence on all of these points, I must dissent on the ground that the evidence was not sufficient for a rational trier of fact to have found appellant guilty beyond a reasonable doubt of theft by taking. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. I also dissent from the majority's conclusion that appellant waived his objection to the trial court's failure to instruct the jury on the elements of theft by deception. It is my belief that the failure to give a charge on theft by deception constituted "a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." OCGA § 5-5-24 (c). "To constitute harmful error within the meaning of this subsection, an erroneous charge or failure to charge must result in a gross injustice, such as to raise a question as to whether the appellant has been deprived of a fair trial." *Hamrick v. Wood*, 175 Ga. App. 67 (2) (332 SE2d 367) (1985). I believe the failure to give a charge on theft by deception in this case meets the criteria set forth in OCGA § 5-5-24 (c) and *Hamrick v. Wood*, supra. For this reason also, I respectfully dissent from the opinion of the majority.

I am authorized to state that Judge Sognier joins in this dissent.

DECIDED MARCH 19, 1987 —
REHEARING DENIED APRIL 3, 1987 —

*Billy L. Spruell*, for appellant.
*Robert E. Wilson*, District Attorney, *Michael J. Bowers*, Attorney General, *Harrison Kohler*, Senior Assistant Attorney General,

*George P. Shingler, Assistant Attorney General,* for appellee.