69350. ROBERTS v. THE STATE.
(327 SE2d 819)

BIRDSONG, Presiding Judge.

Motor Vehicular Homicide. Vivian Roberts was convicted of vehicular homicide in the first degree and sentenced to serve four years. She brings this appeal enumerating six asserted trial errors. *Held*:

The facts giving rise to this unfortunate incident authorized the jury to conclude that at about midnight on December 20, 1981, Ms. Roberts, while operating her sister's car in the city of Swainsboro, was observed approaching in an easterly direction an intersection of two thoroughfares. The eyewitness testified that Ms. Roberts did not slow down at the intersection and proceeded on through. The eyewitness also testified that at the same time she observed a second car approaching from the south. As the northbound car entered the intersection, the driver apparently observed the eastbound car being operated by Ms. Roberts and sought to avoid the impending collision by turning sharply to the right. However, Ms. Roberts' car had proceeded so far into the intersection that her car collided with the northbound vehicle. Ms. Roberts struck the northbound car at the left front wheel with the front of her car. Apparently the momentum of Ms. Roberts' car caused her vehicle after colliding with the northbound vehicle to turn counterclockwise, striking the northbound car a

second time resulting in the northbound car also skidding in a counterclockwise direction into a light pole on the northeast corner of the intersection.

The driver of the northbound car (a police officer responding to a domestic disturbance) was not wearing a seatbelt. The force of the collision with the light pole threw the officer across the front seat of his vehicle causing him to strike his head against the car frame on the passenger side of the car. The injuries caused the almost instantaneous death of the police officer. Officers investigating the accident testified that Ms. Roberts, in their opinion, was under the influence of an alcoholic intoxicant to such an extent that her physical faculties were impaired sufficiently to render her less than a safe driver. In contradiction to the state's evidence, Ms. Roberts testified that she stopped or drastically slowed before entering the intersection; that her vision was impaired by a building that projected to the road edge on the southwest corner; that she proceeded very slowly into the intersection, saw the police car coming at a very fast rate of speed; that as soon as she saw the oncoming car she either stopped or almost stopped; and, that the police car sideswiped her car as it sped by, thus causing it to go into its spin and the pole. She also argued that if the officer had been wearing his seat belt he would not have suffered serious injury.

Ms. Roberts testified that she had drunk one beer six to eight hours before the accident and definitely was not intoxicated. In rebuttal for purposes of impeachment, the state showed that several hours after the accident, Ms. Roberts had a .14 alcohol content in her urine, a level which an expert opined could not have been caused by the consumption of only one beer a number of hours before the test was conducted.

The trial court charged the jury that in order to convict, it would have to be satisfied beyond reasonable doubt that Ms. Roberts drove her vehicle while under the influence of alcohol, that it was the operation of her vehicle that caused the death of the police officer, that her operation was criminally negligent and that the police officer's death was causally related to, i.e., was caused directly by the influence of a sufficient quantity of alcohol to impair her ability safely to operate the vehicle. However, even though Ms. Roberts sought wholly to exonerate herself from the cause of death and attribute death to the decedent's excessive speed, failure to observe other traffic, and failure to use his seat belt, the trial court declined to present an affirmative defense under any guise. *Held*:

1. In her first three enumerations of error, Ms. Roberts contends the trial court erred in refusing requested charges setting forth the contentions advanced by Ms. Roberts. In effect, Ms. Roberts contended she was not guilty because the police officer caused his own

death by recklessly speeding and negligently failing to use his seatbelt, thus creating doubt as to the causation of death. She also sought to place the blame on the deceased by requesting a charge that the police are required to observe traffic laws as are other citizens, except in an emergency (there being no contention in this case that the officer was responding to an emergency). Ms. Roberts lastly requested that the jury be charged that it could not consider its personal knowledge or recollection of any traffic ordinances in force locally in Swainsboro but was bound to return its verdict only on the evidence and law adduced in court. Ultimately, Ms. Roberts' contentions amounted to a denial of guilt because of an accident.

Appellant cites several cases in support of her argument that the trial court *must* give the contentions of a defendant in a criminal case when properly requested. See *Mitchell v. State*, 134 Ga. App. 376 (8) (214 SE2d 593). See also *Patrick v. State*, 245 Ga. 417 (265 SE2d 553, 558 (11)); *Hannah v. State*, 212 Ga. 313, 316 (92 SE2d 89); *Ryder v. State*, 121 Ga. App. 796, 798 (4) (175 SE2d 882).

We conclude the appellant has misconstrued the tenor of those decisions. The *Mitchell* case, supra, merely holds that when it elects to do so, the trial court does not err by stating the contentions of the parties allegedly because such is an expression of opinion by the trial court. In the *Hannah* case, supra, the Supreme Court simply held that if the trial court undertakes to charge the contentions of the parties, then the court must do so correctly. There is no mandate in that case that in a criminal case the contentions of the parties *must* be charged. Indeed in the *Ryder* case, supra, the court held that it is proper for the trial court (even its duty) to charge the contentions of the parties where supported by the evidence (apparently contemplating civil cases) and it is not improper to charge the contentions of the defendant in a criminal case without request where supported by the evidence.

However, while the trial court may not be required to recount the evidentiary contentions of the defendant, when those contentions are in nature affirmative defenses or pleas of confession and avoidance, this places upon the court the obligation to present the legal issues raised by those contentions.

It is clear in this case that the state's evidence specifically rebutted each of the contentions presented by Ms. Roberts. On cross-examination of the state's witnesses, each expressly rejected her contentions. It is equally clear that in this case the jury was told that the officer's death had to be the direct result of Ms. Robert's intoxication and then only if the intoxication impaired her ability to operate her vehicle in a safe manner. As presented to the court, Ms. Roberts' requests for charge highlighted only her evidentiary contentions and thus in effect were one-sided and tended to be argumentative, ignor-

ing the obverse inferences that her actions could amount to criminal negligence. To present the issue fully, the trial court would have been compelled to highlight the state's evidence rebutting Ms. Roberts' contentions. Trial judges, particularly in criminal cases, properly are discouraged from discussing the evidence in the charge. See *Nelson v. State*, 124 Ga. 8 (52 SE 20); *Whitmire v. State*, 40 Ga. App. 235 (149 SE 169). Charges that favor one party properly may be rejected by the trial court where the issues are fully, clearly and properly presented to the jury. *Ferry v. State*, 161 Ga. App. 795, 800 (6) (287 SE2d 732). Ms. Roberts' evidence in substance presented the sole and affirmative defense that as to her, the officer's death was an accident. The trial court effectively and affirmatively presented that issue by its charge to the jury on accident without objection or request for further charge or clarification. Where, as here, the trial court's charge, when viewed in its entirety, fairly and adequately presents the only real issue raised to the jury (guilt or innocence of vehicular homicide caused by drunk driving and not reasonably the result of an accident), it is not necessary for the court to give examples of innocence by charging the contentions giving rise to those issues. *Johnson v. State*, 164 Ga. App. 7, 10 (296 SE2d 202). There is no merit in these first two enumerations.

2. As to the third enumeration, there was no evidence offered as to the content or effect of local ordinances as they might affect the conduct of either driver. It has long been the law of this state that where there is no evidence giving rise to a factual issue, the trial court does not err in refusing to charge upon such issue even in the face of a request. See *Pulliam v. State*, 236 Ga. 460, 466 (224 SE2d 8); *Nuckles v. State*, 137 Ga. App. 200, 204 (223 SE2d 245). See also *Chandler v. Owen*, 137 Ga. App. 518, 519 (224 SE2d 497).

3. In her fourth enumeration of error, Ms. Roberts contends it was error for the court to admit evidence by an investigating officer that it was not uncommon for a person arrested for DUI to refuse to take an appropriate alcohol test. This alleged error was rendered moot by the action of the trial court at a later point in the trial removing that evidence from the jury and forcefully charging the jury they were not to consider such evidence. Assuming that the evidence was erroneously admitted, any error was rendered harmless by the court's removing the evidence from the jury's consideration and instructing the jury not to consider it during their deliberations. *Perry v. State*, 139 Ga. App. 705, 706 (1) (229 SE2d 519).

4. In her fifth enumeration of error, Ms. Roberts urges error in the failure of the state to surrender certain photographs of the automobiles involved in the accident in spite of a *Brady* motion for the production of exculpatory evidence.

The evidentiary context of this enumeration is best highlighted

by observing that the two cars were available to both the state and the defense throughout the pretrial and trial process. Both the state and the defense had many pictures of the scene and the autos involved in the crash. Though there is no contention that the state made their photographs available prior to trial, it is uncontested that the defense was presented with each of the state's pictures before it was identified and introduced to the jury. Thus though discovery was belated, it was accomplished during trial. It has been held that *Brady* is not violated when the *Brady* material is available to the defendant during trial. *Castell v. State*, 250 Ga. 776, 781 (301 SE2d 234). Moreover, *Brady* relates to exculpatory material. The pictures themselves are neutral, merely reflecting the ultimate damages inflicted upon the vehicles. The pictorial view of the damages became inculpatory when an expert for the state testified that the damages supported a theory that Ms. Roberts' car collided with the side of the police car, indicating her negligence. Ms. Roberts sought to show an exculpatory quality in the pictures by contending that an expert available to her would testify that the damages were consistent with the police car striking Ms. Roberts' car. However, no such offer was made during trial; thus Ms. Roberts has shown no prejudice or harm resulting from the belated disclosure of the pictures. In the absence of harm, there can be no harm in the belated disclosure of the pictures. See *United States v. Agurs*, 427 U. S. 97 (96 SC 2392, 49 LE2d 342).

5. This leads to Ms. Roberts' last enumeration of error, i.e., that the trial court erred in refusing a new trial based upon newly discovered evidence. This enumeration is based upon the evidence developed by an expert found after trial who disputed the findings of the state's expert and would have placed the cause of death as the failure by the police officer to wear an available seatbelt at the time of the collision. As reflected in *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792), the burden is placed upon the movant for a new trial based upon newly discovered evidence to meet each of five stated tests. Though the expert's opinions were not known until they were sought, Ms. Roberts concedes that this opinion was not sought until after the trial was over. There is no showing that the expert could not have formed and rendered his opinion based upon evidence that was known and available to Ms. Roberts before trial. Moreover, the primary effect of the proffered testimony was of a nature to contradict and impeach the testimony of the state's expert. Thus the proffered testimony of the expert fails in several categories to satisfy the test for "newly" discovered evidence. There being a failure to meet all the tests mandated for the grant of a new trial, there was no abuse of discretion by the trial court in denying the motion for new trial based upon newly discovered evidence. *Drake v. State*, 248 Ga. 891, 894 (287 SE2d 180); *Offutt v. State*, 238 Ga. 454 (233 SE2d 191).

*Judgment affirmed. Carley, J., concurs in Divisions 2, 3, 4, and in the judgment. Beasley, J., concurs specially.*

DECIDED MARCH 7, 1985.

W. Washington Larsen, Jr., *for appellant.*
Richard A. Malone, District Attorney, William H. McClain, Assistant District Attorney, *for appellee.*

BEASLEY, Judge, concurring specially in part.

I concur generally and concur specially with respect to Division 4. Appellant complains that it was fundamentally unfair for the state not to disclose before trial, in response to her discovery motion, photographs taken of the police car[1] by an officer of the Georgia State Patrol the day after the collision. The first problem with her enumeration of error is that it does not claim any error by the court. It can only be assumed that she means that the court erroneously denied her motion for new trial on this ground. The procedural posture shows that she is not entitled to any relief.

Defendant filed a twenty-four page "Motion for Information . . ." within two weeks after her arraignment on June 25, 1982. One of the items for which defendant moved the court to enter an order compelling the state to disclose and produce was "(3) Photographs of the vehicle in which the decedent was traveling at the time of the fatal collision." This was under the heading "(D) Exculpatory Tangible Evidence." At the same time, defendant filed a "Demand for Discovery of Defendant's Statements and Scientific Reports" pursuant to Georgia Code §§ 27-1302 and 27-1303 and Demurrers to Indictment.

On January 4, 1983, the state responded to the Motion for Discovery, stating that it had no exculpatory material and that it declined "to furnish the Defendant with any material other than the list of witnesses, scientific reports, and Defendant's statements." It further offered to submit its file to an in camera inspection by the court at a time and place designated by the court.

On January 14, 1983, the court ruled on the merits of the demurrers, after noting that both parties had been requested to submit briefs and that only the state had complied. No mention was made of the discovery motion, and defendant took no further action with regard to it. She never communicated to the court that she was dissatisfied with the state's response and she never asked that the motion be heard. According to her position, she anticipated that there were photographs, since she believed that photographing is a usual part of po-

---

[1] She does not complain here of the one photograph of her car.

lice investigation of this type case, but apparently she never sought them from the Georgia State Patrol. Nor does it appear that she took or arranged for taking photographs of the police vehicle or of the scene herself, although she did submit a number of photographs of her own car.

The case was called for trial on April 11, 1983, and lasted for five days. After the jury had been selected and dismissed for the night, the court asked if there were any motions to be heard, and defendant did not pursue the discovery motion. Nor did she do so when the court convened in the morning and again invited counsel to bring up anything they wished prior to the jury's being brought in.

On the second day of the trial, the Georgia State Patrol officer who investigated the collision shortly after the incident testified, after having been qualified as an expert, with respect to his opinion as to how the collision occurred. In addition to his diagram and accident report, made from information obtained at the scene, the officer identified a photograph of the left front tire and wheel of the police vehicle. No objection was made. Defendant cross-examined the officer about it, and expressly stated that he had no objection when it was moved into evidence and published. When at the end of the day the court asked if there were any motions to dispose of, the defendant indicated there were none.

The next morning, the third day of trial, defendant asked the court to order the state to produce all of the state's photographs, contending they were exculpatory, that a "Brady motion" had previously been filed but not complied with. The state took the same position it had in its response to the motion and then offered to, and did, hand the photographs to defendant's counsel, who indicated he wanted to look at them. The court said the matter should have been taken care of the day before, after the jury left, rather than when the jury was back and would have to wait, and the trial proceeded with the cross-examination of the investigating officer.

Subsequently, the officer identified a number of additional photographs of the utility pole struck, the police car, defendant's car, the highway, and the intersection, all taken by another officer the day after the collision. When they were offered in evidence, defendant's counsel stated he had no objection to the photographs and, again a few minutes later, he reiterated that position. Consequently, the court "admitted (them) without objection." In addition, the defendant did not have any objection in response to the court's inquiry, when the state then sought to publish the photographs to the jury.

Thus, the facts are that, without ruling on whether they were exculpatory or not, the court simply directed the state to show the photographs to defendant as soon as the court was asked to rule. In addition, defendant expressly did not object when the photographs were

tendered and admitted.

It is difficult to perceive how defendant contends the court erred, under these circumstances, when it denied defendant's motion for new trial on this ground.

A court may grant a new trial when any material evidence is illegally admitted or over the objection of the movant. OCGA § 5-5-22. In the first place, the objection to not providing the photographs earlier, which defendant now says would exculpate her when coupled with her expert's testimony, was waived by defendant's inaction prior to the time she finally asked the court to see them, which request was promptly granted. Secondly, she expressly waived any objection based on earlier non-disclosure or non-production, by expressly agreeing to their admission in evidence. *Eiberger v. West*, 165 Ga. App. 559 (301 SE2d 914) (1983); *Cooksey v. State*, 149 Ga. App. 572 (254 SE2d 892) (1979). Thirdly, as has been so well pointed out in the majority opinion, the photographs were not exculpatory. They were not that sort of evidence which the state knows, or should know, tends to show that defendant is not culpable. As a matter of fact, the state showed they were inculpatory. It was only defendant's later-acquired opinion evidence which was exculpatory. The photographs were merely evidence of physical condition, exculpatory only in the view of one person whose opinion was that they did not support the opinion of another person.

The failure of defendant to timely obtain the information upon which her expert would render an opinion contrary to that rendered by the state's expert in this case cannot constitute a *Brady* violation.