## 71689. ALLEN v. THE STATE.
### (340 SE2d 246)

BIRDSONG, Presiding Judge.

Mark Treadwell Allen was convicted of two counts of vehicular homicide in the first degree. He was sentenced to serve 10 years followed by 15 years on probation. Allen brings this appeal enumerating five asserted errors. *Held*:

1. In his last enumeration, Allen complains the evidence did not support the verdict of guilty. We will consider this enumeration first for it places the other enumerations in proper context. While the evidence was in conflict, the jury was warranted in concluding that the following events led up to the two deaths involved. Allen and a friend who lived in the Stone Mountain area both worked for an auto repair shop in Hapeville. Each day the two young men (Allen was aged 18 at the time of the incident involved) drove either on route I-20 or Stone Mountain Freeway to I-285, thence south to Hapeville. Each day they returned along the same route, taking I-20 if the traffic was not too heavy or going on to the Stone Mountain Freeway if the traffic was congested on I-20. The facts showed that Allen was a car buff. He had purchased a 1968 Chevelle which was in bad condition, its motor having been burned and the body rusted out. As a trade school project for which he received academic credit, Allen rebuilt the body and motor of the Chevelle. While the body style and markings on the body would indicate that the Chevelle had a smaller engine, in fact Allen had placed a more powerful engine in the chassis. Not long before the incident in question, Allen had finally gotten the car in the condition which satisfied him. He testified he was very proud of the result.

On the evening of November 20, 1984, Allen and his companion left work in Hapeville after working a 12-hour day. Allen was driving his Chevelle and the two young men had reached a point on I-285 just north of I-20. Though Allen gave a different version, the jury could believe that when reaching a point near the Covington Highway entrance ramp, Allen moved alongside a Corvette being driven at about 55 mph in lane 3 (lane 1 being the far right lane while proceeding north, lane 2 being the next lane westward to the left, lane 3 the next to the left, and lane 4 being the fast lane next to the dividing wall separating the northbound and southbound traffic). Allen was driving in lane 4 to the left side of the Corvette. Allen and the driver of the Corvette both testified that when Allen pulled alongside of the Corvette, Allen "popped" the accelerator, making a slight roar of the engine. The driver of the Corvette ignored the challenge, Allen conceding that he was challenging the Corvette to a race. Allen dropped behind the Corvette and then pulled alongside the right side of the Corvette, again seeking to gain the attention of the driver in order to challenge the Corvette to a race. At this point the driver of the Cor-

vette shook his head in a negative fashion. The driver of the Corvette testified that he did so because he thought the traffic was too heavy to engage in such activities and to signify his lack of interest. Allen testified that he interpreted the shake of the head as an indication that the driver of the Corvette disdained a race because the Chevelle appeared to be a less powerful model and the outcome of the race was preordained.

Allen testified he was aware that on a long sustained race the Chevelle could not compete but because of the extra power in the large motor, the Chevelle would greatly exceed the Corvette in the initial acceleration. At any rate when the driver of the Corvette declined to accept the challenge, Allen "gunned" the motor and pulled rapidly away from the Corvette which was already going 55 mph, ostensibly to prove the power of acceleration in the Chevelle. The driver of the Corvette observed the Chevelle weaving in and out of lanes passing cars in front of it. Another eyewitness testified that he was proceeding north at that place and time. He was going to move from lane 3 to lane 1 in order to exit I-285. He looked into his rear view mirror and saw the lights of an approaching vehicle moving rapidly and weaving in and out of the several lanes. This driver cautiously moved to the right into lane 1 at the same time that the car approaching from the rear came up directly behind him in lane 1. The witness observed that the car was a Chevelle. The witness reached lane 1 at about the point where the entrance ramp from Covington Highway flowed into the entrance lane merging Covington Highway traffic into I-285. There were two or three cars in line in lane 1 at this time. The witness testified that the Chevelle driven by Allen was moving at about 75 mph. Other witnesses also placed the speed of the Chevelle at 75. Allen admitted that at about this point in time he was driving at about 70-75 mph. Allen drove to the right into the entrance lane to get around the several cars in front of him in lane 1.

Unknown to Allen a Buick automobile being test driven by Murphy with a view toward a possible purchase, with Murphy's wife and two children as passengers, had sought to drive onto I-285 from the Covington Highway. After leaving the descending Covington Highway ramp but while still in the entrance lane, apparently Murphy's vehicle suffered a flat tire on the left rear. Murphy pulled the car partially onto the grass at the far right of the entrance lane with a part of the car extending into the emergency lane. There was evidence that the entrance lane was 15 feet wide and the Murphy car extended approximately 2-1/2 feet into the emergency lane. Murphy was in the process of changing the tire in a bent-over position. His wife was standing to the rear of the car apparently watching Murphy, facing north. The two Murphy children were out of the car and up on a grassy slope to the east side of the car.

As Allen entered the entrance lane passing the cars in front of him on the right side, apparently he saw the stopped vehicle in front of him. He tried to swerve to the left to get back into lane 1, 2 or 3 but lost control of the Chevelle. It fishtailed and the right side of the Chevelle struck the rear of the Buick, knocking the Buick some 60 or more feet to the north. The Chevelle also struck Mr. and Mrs. Murphy apparently causing their instantaneous deaths. Immediately after the accident, an approaching motorist saw two young children run from the east side of I-285 as if they were going to run into the highway. The car stopped and a passenger grasped the two children and placed them in her car. She and her husband (who was driving) then saw that the children were trying to reach their father who had been fatally injured. The two children ultimately were placed into the custody of the police who in turn surrendered them to the custody of their maternal aunt.

In essence, Allen conceded that he violated several statutes by failing to signal his moves into the various lanes and by exceeding the posted speed limit. However, he contested that his actions amounted to the wantonness necessary to constitute reckless driving. In order to find that Allen's driving amounted to reckless driving, the jury was required to find beyond reasonable doubt that the overall conduct including the several violations of statute reflected a reckless disregard for the safety of other persons or property.

We are satisfied that evidence that Allen wanted to prove to the driver of the Corvette that the Chevelle could greatly exceed the acceleration powers of the Corvette, rapidly accelerating the Chevelle from 55 to 75 mph on a busy highway, weaving in and out of traffic to pass cars impeding his progress and passing cars on the right at 75 mph while in an entrance lane constitutes evidence of a character to satisfy a finding by rational jurors beyond reasonable doubt that such conduct was reckless and in disregard of the safety of the lives and property of other drivers on that highway. Where there is evidence of that quantum, the evidence is sufficient and will not be grounds for reversal. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Brown v. State,* 253 Ga. 363, 365 (3) (b) (320 SE2d 539).

2. In enumerations 1 and 4, Allen complains the trial court erred in failing to give sua sponte unrequested charges.

(a) In the first enumeration, Allen argues that he had moved from the entrance lane into lane 2 and thus the Murphy car was out of all danger from his car. As he (Allen) was trying to move into lane 3 to the left of the car in front of him in lane 2, that car unexpectedly also moved to the left. Allen testified that he tried to turn sharply to avoid a collision with that car and his car fishtailed from lane 3 all the way across lanes 2, 1 and the entrance lane striking the Murphy car. Thus Allen complains the trial court should have charged as Allen's

sole defense on the concept of superseding, intervening causation as a defense.

Had that been Allen's only defense perhaps his argument would have more weight. However, it is clear that Allen sought to invoke a finding of guilt of the misdemeanor level of vehicular homicide as well as pure accident. Additionally we note the trial court required the jury to find that it was Allen's actions alone that caused the deaths of the Murphys. The court also charged on the theory of accident. This was sufficient to present the general theory now advocated on appeal by Allen. *Johnson v. State*, 170 Ga. App. 433 (317 SE2d 213).

(b) In enumeration 4, Allen complains the trial court did not charge the possibility that the Murphys may have stopped the Buick in a position on I-285 so that they contributed to their own deaths.

Again, we observe that Allen did not request such a charge. Moreover, in regard to both charges addressed in enumerations 1 and 4, not only did Allen not request in writing either of these charges, but at the conclusion of the charge of the court, counsel were specifically asked if there were any objections to any portion of the court's charge. Counsel for Allen answered that there were no objections. Clearly it is the law of this state, even in criminal cases, that if the trial court asks if there are any objections to the charge given, counsel for the defendant must either state his objections or reserve the right to make such objections on motion for new trial or on appeal or waive any such objections. *Rivers v. State*, 250 Ga. 303, 308 (7) (298 SE2d 1); *Ross v. State*, 173 Ga. App. 313, 316 (325 SE2d 919). In this case in spite of an invitation to interpose such objections as might be deemed appropriate, counsel for Allen failed to raise or reserve any objection at all. Such a situation presents the clearest example of waiver. *Taylor v. State*, 174 Ga. App. 323, 324 (1) (329 SE2d 625).

3. In his second enumeration of error, Allen contends that he was improperly denied a new trial because by affidavit Allen presented information that during the trial a number of deputy sheriffs were present as spectators while in uniform. There was one passing reference by one witness that Mr. Murphy was a deputy sheriff. At no time during the trial was any mention made of the presence of these spectators at what admittedly was a public trial. There is no attempt made other than by the rankest speculation that the presence of these persons in the courtroom could have had any influence of any kind upon the jurors. We have no hesitance adhering to the rule extant in the appellate procedure of this state that grounds enumerated as error for the first time upon motion for new trial or direct appeal and not objected to at trial thus calling for a ruling by the trial court will not furnish grounds for appeal or constitute cognizable error. This court exists to correct error made at trial. See *Pulliam v. State*, 236 Ga. 460, 465 (224 SE2d 8); *Moore v. State*, 138 Ga. App. 902 (2) (227

SE2d 809); *Cauley v. State*, 137 Ga. App. 814, 815 (224 SE2d 794).

4. In enumeration of error 3, Allen contends the admission of a photograph of the Murphys' two surviving children (both very young) had no relevancy to the issues before the trial and was offered by the state solely for the purpose of inflaming the jury. At the time the picture was offered, this objection was made. The state explained that there had been repeated reference to these two children and their location and activities at the scene of the incident. It was the movement of the children that caused certain of the witnesses to stop at the scene. The state explained that the photograph was being offered rather than calling the children themselves. The trial court then admitted the pictures for the limited purpose of explaining the actions of the witnesses. Where the relevancy or competency of evidence is doubtful, the rule is that it should be admitted and its weight left to the determination of the jury. *Guy v. State*, 138 Ga. App. 11, 13 (225 SE2d 492). See *Godfrey v. State*, 243 Ga. 302, 304 (2) (253 SE2d 710). In view of the children's presence at the scene, their actions and the conduct of other witnesses arising out of the actions of the children, we can discern no error to the material prejudice of the appellant's substantial rights by the admission of the photograph for the limited purpose stated by the trial court. We find no error in the admission of this evidence.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED JANUARY 28, 1986.

*Nicholas G. Dumich*, for appellant.

*Robert E. Wilson, District Attorney, R. Stephen Roberts, Susan Brooks, Assistant District Attorneys*, for appellee.