## A02A1617. MOORE v. THE STATE.
### (574 SE2d 372)

PHIPPS, Judge.

A car operated by Tommie Lee Moore collided with an 18-wheel tractor-trailer rig, causing the death of Moore's passenger. As a result, a two-count indictment was returned charging Moore with driving under the influence of alcohol with a blood alcohol concentration of 0.10 grams or more and with homicide by vehicle in the first degree. A jury found him guilty of both counts. The court merged the former count into the latter and sentenced Moore for first-degree vehicular homicide. Among other things, Moore contends in this appeal that the trial court erred in refusing to instruct the jury on his defense of accident or misfortune. Finding merit in this contention, we reverse Moore's conviction of vehicular homicide and remand for further proceedings.[1]

Six prosecution witnesses testified about the events surrounding the collision and Moore's alcohol consumption. The driver of the tractor-trailer rig testified that he was traveling west on Interstate 285 near its intersection with Interstate 85 when his truck lost power due to a problem with the fuel filter and began to decelerate from approximately 55 mph to between 10 and 15 mph. The driver then activated the truck's emergency flashers and attempted to pull off onto the median. But traffic was heavy, and, before the trucker could exit the roadway, he realized that his truck had been struck from behind with significant force. He then stopped and found Moore's car positioned under his trailer.

The State's accident investigator testified to four findings he had made: (1) he did not observe any skid marks behind Moore's car, (2) the wheels on Moore's car were turned slightly to the right, (3) open containers of beer were found in the car, and (4) the tractor-trailer rig was straddling the middle and far right lanes of the highway. On direct examination, the investigator opined that the lack of skid marks could have meant that Moore did not apply his brakes. On cross-examination, however, he acknowledged that the lack of skid marks could also have meant that the collision occurred instantane-

[1] On remand, the State may retry Moore, or it may have the DUI conviction reinstated and have Moore resentenced accordingly. See *Linson v. State,* 239 Ga. App. 658 (522 SE2d 55) (1999).

ously, so that Moore did not have time to apply his brakes, and that the truck was traveling with a full load, so that its deceleration would have been rapid. The investigator noted that the angle of the wheels of Moore's car indicated that he was trying to maneuver around the truck.

Moore's passenger was pronounced dead on the scene. The parties stipulated that the cause of death was blunt force trauma sustained during the collision. Following the collision, Moore was transported to a hospital where his blood was drawn for alcohol testing. Testimony given by the State's forensic toxicologist showed that his blood alcohol concentration was 0.11 grams per 100 milliliters or 0.11 grams percent. An acquaintance of Moore's testified about Moore's drinking earlier in the evening. An emergency medical technician who had responded to the collision testified that, on the scene, Moore emanated a strong odor of alcohol. A motorist testified that he had observed Moore's vehicle being driven at a high rate of speed in the far left lane sometime before the collision.

According to the State, Moore caused the death of his passenger by driving while under the influence of alcohol. Moore's defense was that the rapid deceleration of the truck rendered the collision unavoidable and that the State's evidence did not support the per se DUI charge.

1. Moore contends that the court erred in refusing to charge the jury on misfortune or accident under OCGA § 16-2-2: "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."

The trial court refused to give this charge, essentially on grounds that it would confuse the jury because it was undisputed that Moore did not intend to run into the truck or to kill his passenger. In so ruling the court erred. A charge on accident or misfortune has been approved in vehicular homicide/DUI cases, if there is evidence that the defendant could not have avoided the collision due to circumstances beyond his control.[2] "It is error to fail to charge on this

---

[2] See *Morris v. State*, 210 Ga. App. 617, 618 (2) (436 SE2d 785) (1993) (evidence that foggy weather conditions made it impossible or almost impossible for defendant to see the stop sign he ran at the time he struck the victim's vehicle); *Allen v. State*, 177 Ga. App. 600, 602 (2) (a) (340 SE2d 246) (1986) (evidence that defendant struck the victims with his car after turning sharply to avoid a collision with another vehicle which unexpectedly moved into lane at same time as did defendant); *Roberts v. State*, 173 Ga. App. 701, 704 (1) (327 SE2d 819) (1985) (contrary to state's evidence that defendant caused collision by not slowing down at an intersection, defendant testified that she stopped or drastically slowed down and was then hit by speeding vehicle); *Carswell v. State*, 171 Ga. App. 455, 460 (5) (320 SE2d 249) (1984) (evidence that defendant's car left highway and struck victims after he swerved to avoid hitting vehicle entering highway); see also *Miller v. State*, 236 Ga. App. 825, 828 (2) (513 SE2d 27) (1999) (evidence that defendant could not have avoided hitting bicyclist

defense, whether it is the sole defense, the controlling issue, or one of the main theories of defense if the issue is raised by the evidence. . . ."[3] Because the jury could have found from the evidence that the truck decelerated so rapidly that Moore could not have avoided the collision, the trial court erred in refusing to instruct the jury on accident or misfortune.

2. Moore contends that the trial court erred in refusing to allow his expert to testify about factors that may have caused or contributed to the collision, and in refusing to permit him to cross-examine the State's expert on this subject.

The court ruled that neither Moore's nor the State's expert in accident reconstruction could express his opinion that any particular factor proximately caused the collision or contributed to it. The court excluded such expert testimony on the ground that the jurors were themselves competent to draw conclusions from the evidence as to the causative or contributing factors.

> Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman. However, it is equally clear that the scope of what is admissible as expert opinion testimony is not unlimited. It is the established rule in Georgia, that where (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony. A party may not bolster his case as to the ultimate issue with expert testimony when the jury could reach the same conclusion independently of the opinion of others. Furthermore, because the admission of such evidence . . . is a matter resting within the sound discretion of the trial court, we will not disturb the trial court's ruling absent evidence of abuse.[4]

During cross-examination, defense counsel asked the State's expert to give his opinion as to what caused the collision and as to whether the truck slowing down or losing power could have contributed to the collision. The trial court sustained the State's objection to

---

because the night was so dark, the bicycle did not have a big enough reflector, and the bicyclist was wearing nonreflective clothing).

[3] *Carswell*, 171 Ga. App. at 461.

[4] (Footnote omitted.) *Wright v. State*, 233 Ga. App. 358, 359 (1) (504 SE2d 261) (1998).

these questions. We find no abuse of discretion. On the basis of the evidence admitted, these were conclusions which the jurors could have drawn for themselves.

We are unable to determine whether the trial court abused its discretion in refusing to admit the testimony of Moore's expert, as no proffer by Moore of this testimony appears in the record.[5] We do, however, note that evidence concerning the collision in this case was relatively sparse. There were no eyewitnesses. And the jurors were faced with the difficult task of determining whether Moore had time to avoid the collision. This determination involved computations of speed, distance, and human reaction times beyond the ken of the average juror. We, therefore, can envision expert testimony in addition to that presented that would have been admissible.

3. Moore contends that the trial court erred in refusing to allow him to show that, because the truck had broken down earlier in the day and had not been taken to a mechanic, its driver was violating federal motor carrier safety regulations by operating it on the interstate at the time of the collision. The court ruled that mechanical difficulties experienced by the truck prior to the collision were too remote to be relevant.

*Parker v. R & L Carriers*[6] presented a somewhat similar situation. There, we held that although a truck driver's fatigue may have explained his negligence in causing a collision by running a red light, his violation of a federal motor carrier safety regulation by driving while fatigued was not the proximate cause of collision, so that trial court did not err in refusing to charge the jury that the driver committed negligence per se by violating the federal regulation. Here, the trial court similarly reasoned that any violation of the federal regulation was not the proximate cause of the collision. We agree. Moreover, in *Miller v. State*,[7] we recognized that contributory negligence, as such, is not a defense in a vehicular homicide case. Therefore, on grounds of both irrelevance[8] and immateriality,[9] the court did not err in refusing to allow Moore to present evidence of the trucker's violation of federal regulations.

4. Moore contends that because he was indicted on a per se DUI charge, the court erred in allowing the State to introduce evidence that a person with his blood alcohol concentration would be a less safe driver.

He argues that the admission of this evidence lowered the

[5] See *Thompson v. State*, 187 Ga. App. 152, 153-154 (369 SE2d 523) (1988).
[6] 253 Ga. App. 628 (560 SE2d 114) (2002).
[7] 236 Ga. App. at 829 (2).
[8] *Parker*, 253 Ga. App. at 629-630.
[9] *Miller*, 236 Ga. App. at 829 (2).

State's burden of proof. There is no merit in this argument, as the court properly charged the jury on the State's burden of proof as to driving under the influence of alcohol with an unlawful blood alcohol concentration. Moreover, the vehicular homicide statute requires the State to establish a proximate causal connection between the defendant's DUI violation and the victim's death, regardless of the manner of commission of the underlying DUI.[10] Therefore, we cannot say that the court abused its discretion in determining that this evidence was relevant. "The admission of evidence is a matter which rests largely within the sound discretion of the trial judge. However, the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value, and evidence is relevant if it renders the desired inference more probable than it would be without the evidence."[11]

5. Moore contends that the State failed to prove that he had a blood alcohol concentration at or above 0.10 grams within three hours of operating a motor vehicle.

The DUI statute in effect at the time of the collision provided that "[a] person shall not drive or be in actual physical control of any moving vehicle while [t]he person's alcohol concentration is 0.10 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended. . . ."[12]

The evidence showed that the collision occurred between 1:30 and 2:00 a.m. The parties stipulated that Moore's blood was drawn at 4:35 a.m. Thus, although the DUI statute does not require the driver's blood to be tested within three hours of his driving,[13] in this case it most likely was. When Moore's blood was tested, its alcohol concentration was 0.11 grams percent. A toxicologist testified that after a person stops consuming alcohol, his body continues to absorb the alcohol for about 30 minutes and then begins to eliminate the alcohol at a fairly constant rate of 0.015 grams percent per hour. This evidence was sufficient to authorize the jury to find that, even if the test was not performed until three hours and five minutes after the collision, Moore had a blood alcohol concentration of 0.10 grams percent or more during the three-hour period after he ceased driving or exercising physical control of the vehicle.

*Judgment reversed and case remanded. Andrews, P. J., and Mikell, J., concur.*

---

[10] See id. at 828 (1).

[11] (Citations and punctuation omitted.) *Hudson v. State*, 273 Ga. 124, 126 (2) (538 SE2d 751) (2000).

[12] OCGA § 40-6-391 (a) (5).

[13] *Yarbrough v. State*, 241 Ga. App. 777, 782 (4) (c) (527 SE2d 628) (2000).

DECIDED NOVEMBER 7, 2002.

*Sexton & Morris, Ricky W. Morris, Jr.,* for appellant.
*Robert E. Keller, District Attorney, Bonnie K. Smith, Assistant District Attorney,* for appellee.