## A11A0862. OGILVIE v. THE STATE.
### (721 SE2d 549)

SMITH, Presiding Judge.

Shirley Ogilvie appeals from her convictions of vehicular homicide in the second degree (OCGA § 40-6-393 (c)) and failing to stop for a pedestrian in a crosswalk (OCGA § 40-6-91 (a)). She contends that the accusation was fatally defective and that the trial court erred in its charge to the jury. Because the trial court erred by declining to give Ogilvie's requested charge on accident, we reverse.

The record shows that the charges against Ogilvie resulted from her striking a seven-year-old child in a crosswalk that went across three lanes of traffic. At the time of the accident it was "not real dark and not real light," and the child was on his way to school. The victim's sister testified that they "ran a little late" that morning "because [the child] was finishing his homework." Although she crossed the street with her brother in the past, she watched him walk to the corner where the crossing guard was stationed that morning because she saw her "bus coming from down the street."

The crossing guard testified that his routine was to stop cars in both directions before indicating that children could cross the street. The crossing guard testified that, on the morning at issue, he was at the curb with the child when a car in one direction stopped of its own

---

accord. He testified that the child was the only one waiting to cross the street.

The crossing guard went into the middle of the intersection about two car lengths from the crosswalk to stop traffic in both directions. Traffic in the northbound lanes came to a stop, but Ogilvie, who was driving the lead car traveling in the southbound lane failed to stop despite the crossing guard's repeated signals. A car behind Ogilvie did stop.

The crossing guard testified that "[w]hen she got right on — the vehicle got right on me. Then about that time, I swerved. And about that time, I heard ka-ploop, and I realized a child had been hit accidentally." He admitted that he was trained never to wave a child into the street until traffic was completely stopped in both directions. According to the crossing guard, he never signaled the child to come out before the child was hit by Ogilvie's car, and he never saw him enter the crosswalk. The crossing guard testified that the child entered the crosswalk on his own before he had completely stopped all traffic.

An eyewitness testified that she saw the crossing guard in the crosswalk with his flashing stop sign at the time the child was hit by Ogilvie's car. According to this witness, the child was just a few steps away from the crossing guard and almost across the street at the time he was struck.

Another eyewitness traveling behind Ogilvie testified that she stopped after she saw the crossing guard walk toward the center of the road. She testified that Ogilvie's car "kept going." She testified that the crossing guard was not holding the sign up, but she stopped when she saw him walking toward the center of the intersection. She never saw the child before he was hit and only saw him afterward. According to this witness, the accident happened immediately after the crossing guard started making some steps toward the center of the road.

Another eyewitness testified that he saw the crossing guard enter the crosswalk first and then signal the child to cross the street with him. This witness never saw the crossing guard stand in the middle of Ogilvie's lane of traffic and attempt to stop it. The crossing guard was about three steps away from the child at the time of impact. He testified that he was flashing his lights in an attempt to stop Ogilvie's car, that he was focused on looking at her face, and that he "saw she was probably looking down. I don't know what she was looking at." During cross-examination, this witness admitted that he never told the police before his trial testimony that he saw Ogilvie looking away.

An expert witness presented by the State testified that the child would have been in the crosswalk for approximately six seconds

before being struck by Ogilvie's car. Based upon his review of the evidence, it was his opinion that Ogilvie saw the child less than one second before impact.

Ogilvie testified that she was driving her daughter to school before the accident and asked her daughter to call her sister-in-law to wish her a happy birthday. While looking ahead, she saw the child "running across the street," and she swerved to the left into oncoming traffic in an attempt to miss him. She had only "a couple of seconds" to stop after she saw him. She saw the crossing guard on her left as she passed through the crosswalk. She denied that the crossing guard was in the middle of the intersection with his stop sign up. She denied that she turned her head toward her daughter when she asked her to call her aunt. She admitted that she had a cell phone in her purse that was sitting on the floor of the front seat, but denied that she reached for it before the accident. She admitted that she failed to yield to the child in the crosswalk and caused his death.

1. Ogilvie contends that both counts of the accusation were fatally defective because they did not specifically allege essential elements of the crimes. The accusation at issue provided:

### COUNT 1

On behalf of the people of the State of Georgia, the undersigned . . . does hereby charge and accuse Shirley Rita Ogilvie with the offense of VEHICULAR HOMICIDE IN THE SECOND DEGREE OCGA § 40-6-393 (c) on February 2, 2009, in that Shirley Rita Ogilvie did, while operating a motor vehicle, cause the death of Kameron Michael Dunmore, a human being, without any intention to do so, through the violation of OCGA § 40-6-91, PEDESTRIAN IN CROSSWALK, by failing to stop and remain stopped to allow a pedestrian to cross the roadway within a crosswalk;

### COUNT 2

The undersigned . . . does further charge and accuse Shirley Rita Ogilvie with the offense of PEDESTRIAN IN CROSS-WALK on February 2, 2009, by failing to stop and remain stopped to allow a pedestrian to cross the roadway within a crosswalk in violation of OCGA § 40-6-91.

We find no merit in Ogilvie's claim because both counts of the accusation recited the Code section Ogilvie was charged with violating. While an accusation must set forth the essential elements of the

charged crime,

> [t]he true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. As long as the defendant is informed of the charges against him so that he may present his defense at trial and not be surprised by the evidence against him, as well as protect against another prosecution for the same offense, the indictment is sufficient. Thus, if a defendant is not misled to his prejudice by any imperfection in an indictment an appellate court will not reverse.

(Citations and punctuation omitted.) *Broski v. State*, 196 Ga. App. 116, 117 (1) (395 SE2d 317) (1990). The State's recitation of the proper criminal statutes in this particular case was sufficient to provide Ogilvie with notice of the elements of the charges against her. Id.; *State v. King*, 296 Ga. App. 353, 354 (674 SE2d 396) (2009). We therefore affirm the trial court's denial of Ogilvie's motion to quash.

2. Ogilvie argues that the trial court erred by refusing to give her requested charge on accident. According to Ogilvie, she was entitled to the charge because she admitted the elements of the offenses with which she was charged and sought merely to justify or excuse them based upon the affirmative defense of accident. The State counters that the defense of accident does not apply to the strict liability offenses with which Ogilvie was charged.

(a) While it is true that there is no element of criminal intent for the strict liability offenses contained in OCGA Title 40, Chapter 6, Uniform Rules of the Road, *Hoffer v. State*, 192 Ga. App. 378, 380 (1) (384 SE2d 902) (1989), it does not follow that the defense of accident is never available for these crimes. See *Moore v. State*, 258 Ga. App. 293, 294-295 (1) (574 SE2d 372) (2002) (trial court erred by refusing to give charge on accident in DUI and vehicular homicide case when jury could have found that truck decelerated so rapidly that defendant could not have avoided collision due to circumstances beyond his control); *Morris v. State*, 210 Ga. App. 617, 618 (2) (436 SE2d 785) (1993) (trial court erred by refusing to give accident charge in DUI and vehicular homicide case when evidence showed foggy conditions could have made it impossible for defendant to see stop sign).

OCGA § 16-2-2 provides: "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." The Georgia Supreme Court has held:

> "Accident" is an affirmative defense whereby it must be established a defendant acted without criminal intent, was not engaged in a criminal scheme, and was not criminally negligent, i.e., did not act in a manner showing an utter disregard for the safety of others who might reasonably be expected to be injured thereby. [Cit.]

*Wilson v. State*, 279 Ga. 104, 105 (2) (610 SE2d 66) (2005).

A plain reading of this Code section demonstrates that the lack of a criminal intent element in a strict liability offense should not preclude the application of this affirmative defense in *all* strict liability cases. One of the requirements for application of this defense is a lack of criminal intent, and a strict liability offense, by its very nature, involves a lack of criminal intent.

(b) Having determined that the defense of accident is available to a defendant charged with a strict liability offense, we must determine whether the charge should have been given based upon the particular facts of this case. "To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge. Whether the evidence is sufficient to authorize the giving of a charge is a question of law." (Citations and footnotes omitted.) *Blackford v. State*, 251 Ga. App. 324, 326 (2) (554 SE2d 290) (2001).

In this case, Ogilvie admitted that she struck the victim in a crosswalk and that she caused his death by failing to yield to him in the crosswalk. She based her request for a charge on accident upon her testimony that she could not stop in time to avoid hitting him because he "was running across the street." The trial court reasoned that a charge on accident was not warranted because

> [t]he State is charging that she did not yield to the pedestrian in the crosswalk. Her defense is that I did not see him until it was too late; the kid ran out. That's hardly admitting that she just didn't yield. . . .
>
> I disagree that she admitted to the offense of failure to yield to pedestrian in the crosswalk. She said the kid ran out, and the only time she saw him was when she was right on top of the kids. She was already in the crosswalk. She didn't say, "I saw him, I didn't yield to him."

The trial court is correct that a charge on accident is not warranted based on a factual defense showing that no crime was committed. For example, if a defendant asserts that he did not run a red light because the light was green at the time he passed through an intersection, a charge on accident is not warranted. *Hoffer*, supra, 192 Ga. App. at 381 (2). The defendant in such a case is not asserting that he ran a red light as a result of misfortune or accident, but that he did not run a red light and therefore committed no crime.

In this case, however, Ogilvie admitted under oath that she failed to yield to a pedestrian in a crosswalk. She never claimed that the pedestrian was not in the crosswalk when she struck him or that her car was already in the crosswalk when she first saw him. The trial court therefore erred by refusing to give the requested charge on accident. *Morris*, supra, 210 Ga. App. at 618 (2); *Moore*, supra, 258 Ga. App. at 294-295 (1).

(c) We are not persuaded by the State's contention that our opinion in *Coates v. State*, 216 Ga. App. 93, 94-95 (5) (453 SE2d 35) (1994), requires a different result. In *Coates*, we affirmed the trial court's failure to charge on accident under OCGA § 16-2-2, holding, "[t]he fact that there was no criminal scheme or undertaking or criminal negligence is not a defense to a 'strict criminal liability' motor vehicle safety statute." Id. at 94. This statement should not be interpreted to mean that a charge on accident can never be given in a strict liability criminal case.[1]

The requirements for a charge on accident are: (1) a crime committed by accident or misfortune; and (2) the absence of (a) criminal intent; (b) a criminal scheme or undertaking; and (c) criminal negligence. OCGA § 16-2-2; *Wilson*, supra, 279 Ga. at 105 (2). In *Coates*, we merely held that an accident charge was not warranted based upon an absence of only factors (2) (b) and (c), an accurate statement of the law. 216 Ga. App. at 94. Additionally, the defendant in *Coates* was not arguing that the crime was "committed by accident or misfortune," but instead that no crime had been committed.

(d) We find no merit in the State's claim that Ogilvie's defense was "one of lack of proximate cause and not accident." This argument overlooks that a defendant can be entitled to *both* a proximate cause defense and an accident defense. See, e.g., *Mitchell v. State*, 255 Ga. App. 585, 591-592 (6) (565 SE2d 889) (2002) (trial court's charges on accident and proximate cause proper and adjusted to evidence in case when boat passenger jumped in front of approaching boat on collision course with passenger's boat). An accident

---

[1] A similar statement in *Arnold v. State*, 228 Ga. App. 470, 471-472 (1) (491 SE2d 819) (1997), should also not be so construed.

charge should be given "if there is evidence that the defendant could not have avoided the collision due to circumstances beyond his control." *Moore*, supra, 258 Ga. App. at 294-295 (1). Since the facts submitted at Ogilvie's trial support the theory that she could not avoid hitting the child "due to circumstances beyond [her] control," id., the trial court erred by refusing to give the accident charge. See *Smith v. State*, 200 Ga. 188, 198 (2) (36 SE2d 350) (1945) (reversing defendant's conviction based upon trial court's failure to charge accident when jury "could have found that the deceased came to his death by walking in front of the truck driven by the defendant").

(e) The State asserts that we should conclude that any error resulting from the trial court's failure to charge on accident was harmless because the trial court's charge as a whole "put [Ogilvie]'s defense squarely before the jury for its consideration."[2] In a felony murder case, *Sears v. State*, 290 Ga. 1 (717 SE2d 433) (2011), the Georgia Supreme Court held that a trial court's failure to charge on accident did not require reversal for two independent and alternative reasons: (1) the entire jury charge "fairly presented the issues, including the defendant's theory, to the jury,"[3] and (2) there was overwhelming evidence[4] that the defendant acted with malice in a felony murder case. (Citation and punctuation omitted.) Id. at 4.

In support of its argument, the State points to the following charges by the court:

No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield.

Negligence by the Defendant in operating his vehicle and the behavior of the victim is relevant. In vehicular homicide cases, the State must prove that the Defendant's conduct was the legal or proximate cause as well as the cause in fact of the death.

If in a given case the injury complained of did not flow naturally or directly from the wrongful act or omission attributed to the Defendant or could not reasonably have

---

[2] The State does not assert that the evidence against Ogilvie was overwhelming.

[3] These charges included the State's "burden of proving beyond a reasonable doubt that [the defendant] acted with the requisite malicious intent to commit each of the crimes charged." Id. at 3. The Supreme Court reasoned that "[t]he jury's conclusion that [the defendant] acted with malice thus necessarily means that it would have rejected any accident defense, which is premised on the claim that he acted without any criminal intent." Id at 4.

[4] The defendant in *Sears* claimed that he shook and hit the 16-month-old victim in an effort to revive her after finding her unresponsive in her playpen. Id. at 2. The State submitted evidence showing that the child died from " 'a very severe brain injury' of the type normally associated with a car wreck or a fall of at least three stories. She had blood behind her eyes and between her brain and skull, likely a product of . . . 'very violent type shaking.' " Id.

been expected to result therefrom or would not have resulted therefrom but for the interposition of some independent or unforeseen cause, the Defendant's such antecedent wrongful act or omission would not be the proximate cause of the injury complained of.

The conduct of the decedent, whether negligent or not, is material to the extent that it bears upon the question of whether, under all of the circumstances of the case, the Defendant was negligent or, if negligent, whether the decedent's negligence was the sole proximate cause of the injury or whether the injury or death resulted from unavoidable accident.

Proximate cause is defined as an act or failure to act that plays a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonable probable consequence of the act or omission.

Ogilvie asserts that the charge did not fairly present her sole defense and was confusing because the trial court also instructed the jury on the State's burden to disprove an affirmative defense beyond a reasonable doubt,[5] but failed to identify an affirmative defense for the jury. Ogilvie's counsel requested a mistrial on this ground after the trial court's charge, arguing:

The Court gave Defense Request to Charge 13, which is called affirmative defense. And it talks about what an affirmative defense is. But how can the jury determine what our defense is, such as accident, without you giving them the charge of accident? In other words, they now have something that says, "The Judge told us that when the Defendant says that they have an affirmative defense, then the State has to disprove it beyond a reasonable doubt." But, yet, how can they do that when you've never told them that accident is an affirmative defense?

We are persuaded by this argument and therefore reverse Ogilvie's convictions. The jury considered this case over a two-day period. It asked multiple questions of the court, and the trial court granted the jury's request for a written copy of the charges. Although the jurors

---

[5] The trial court charged the jury: "An affirmative defense is a defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it. Once the issue of an affirmative defense is raised, the burden is on the State to disprove it beyond a reasonable doubt."

diligently sought to do their duty, they were not provided with a critical charge on Ogilvie's sole affirmative defense of accident.[6] Although the proximate cause charge makes a passing reference to "unavoidable accident," it does not define accident, inform the jury that accident is an affirmative defense, or define the elements of an accident defense. See OCGA § 1-3-3 (2) (defining the term "accident" in all Code sections as "an event which takes place without one's foresight or expectation or design"); OCGA § 16-2-2 (designating accident as an affirmative defense in criminal cases).

Additionally, the State's evidence was not overwhelming; every eyewitness provided a different account of what transpired the morning that the child was killed. Under the particular facts and circumstances of this case, we simply cannot say that the trial court's error in failing to give the requested charge on accident was harmless.

3. Ogilvie's remaining enumeration of error is rendered moot by our holding in Division 2.

*Judgment reversed. Mikell and Dillard, JJ., concur.*

DECIDED NOVEMBER 9, 2011 —
RECONSIDERATION DENIED DECEMBER 15, 2011 — 

*Jackie G. Patterson*, for appellant.
*Sherry Boston, Solicitor-General, Teri B. Walker, Kelly A. McMichael, Assistant Solicitors-General*, for appellee.

---

[6] The Supreme Court's decision in *Sears, supra,* does not require a different result. In *Sears,* the Supreme Court's statement that accident was not the sole defense was dicta, id. at 3, n. 2, and the case is factually distinguishable because it involved an accident charge in a malice murder case.